# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

## J. F. MILLER AND OTHERS V. INTERNATIONAL UNION OF UNITED BREWERY, FLOUR, CEREAL, AND SOFT DRINK WORKERS OF AMERICA, ETC.

June 14, 1948.

Record No. 3244.

Present, All the Justices.

The opinion states the case.

*Ernest S. Merrill,* for the appellants.

*Louis B. Fine,* for the appellees.

MILLER, J., delivered the opinion of the court.

This suit is the result of controversies that arose among members and officers of an unincoporated association in the city of Norfolk known as Brewery and Soft Drink Workers, Local Union No. 188, which is one of the appellees and will hereinafter be referred to as Local 188.

These dissensions culminated in a division of that local union and the formation, by its officers and some members, of another unincorporated association named Brewery Workers, Warehousemen, Soft Drink Drivers and Helpers, Local 468, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America. It is the principal appellant and will hereinafter be referred to as Local 468.

The individual appellants, J. F. Miller, P. N. Anderson, R. C. Powell, and A. G. Godwin, had, prior to April 23, 1946, been President, Recording Secretary, Financial Secretary and Treasurer, and Business Agent, respectively, of Local 188. At a meeting held on the above date and herein discussed at length, they disassociated themselves with that union and were elected to the same offices in Local 468 which was then formed.

At the time of this secession Local 188 had on deposit $1828.08, and also owned several bonds of the value of $456.70, and certain articles of personal property, books and records. This money and property represented the accumulation of dues, assessments, etc., paid over a period of years by members of Local 188. Both local unions, i. e., Local 188 and Local 468, claimed these funds and the property, and the officers of Local 468 undertook to hold and retain them for that union.

The final decree of December 5, 1946, awarded all money, assets, and property to Local 188, and the ultimate question to be decided is: Which of these two unincorporated associations is entitled thereto?

This requires a determination of the validity and force of the action taken at the meeting of Local 188 held on April 23, 1946. It was at that meeting and as a result of proceedings then taken that Local 468 actually came into existence.

For about seven years Local 188 had been connected with and operated under a charter from its parent organization—International Union of United Brewery, Flour, Cereal and Soft Drink Workers of America, which association is likewise an appellee herein. It will hereinafter be referred to as International.

The constitution and by-laws of Local 188 provided, among other things, as follows:

"Section 1. This Union shall be known as the Brewery and Soft Drink Workers, Local Union No. 188, Norfolk, Virginia, and vicinity, of the International Union of United Brewery, Flour, Cereal and Soft Drink Workers of America."

It further provided that regular monthly meetings be held; that fifteen or more members would constitute a quorum; that all offices be filled yearly by nomination in November, election by printed ballot in December, and installation of those so elected in January for terms of one year, except the Business Agent was to hold office for two

years; and that for each special meeting notice be given definitely stating its purpose.

In the Constitution of International, the parent organization of Local 188, is found the following:

"Section 53. If a local union dissolves, the General Executive Board shall appoint one of the last members who remained in the union of that place, as trustee, and he shall turn over all property of the dissolved union to the General Executive Board."

There is no specific provision in the constitution or by-laws or in any resolution of record of Local 188 that requires the giving of notice when a regular meeting is held.

At its annual convention in March, 1946, in Cincinnati, Ohio, International decided to submit to its members, which included Local 188, whether or not it should affiliate with the Congress of Industrial Organizations, better known as C. I. O. To ascertain the wishes of its members, it decided to hold a referendum on that question.

Appellant, A. G. Godwin, had attended that convention as delegate from Local 188. He had been instructed to report upon the action taken by International. At a meeting on April 7, 1946, of Local 188, he reported that such referendum, that is, whether to affiliate with C. I. O., was to be submitted to International's membership. Upon receipt of that information, the Executive Board of Local 188 was directed to ascertain if it could become affiliated with some other international labor organization connected with the American Federation of Labor.

Appellant, Godwin, was personally opposed to any connection with C. I. O., and whether or not justified in such opposition, he insisted that Local 188 should not follow International into such affiliation.

Without further notice to the members of Local 188, the Executive Board, of which appellants Miller, Godwin, and Anderson were members, proceeded forthwith to obtain a charter from International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (an affiliate of A. F. L.), under the name and number of Brewery

Workers, Warehousemen, Soft Drink Drivers and Helpers, Local 468. This charter was actually obtained before the meeting of April 23, 1946.

The regular monthly meeting of Local 188, on April 23, 1946, for which meeting no notice was given, was attended by about eighty to eighty-five of the total membership of three hundred and twenty. It was then determined by a decided majority of those present that Local 188 sever its affiliation with International, its parent organization, and from which it had derived its charter, accept the new charter for Local 468 from the International Brotherhood of Teamsters, Etc.; assign and transfer all of its property, money, assets and contracts with the breweries and distributors relative to hours and wages of its members, dues book and records to the new association—Local 468. Appellants, Miller, Anderson, Powell and Godwin, were also elected to the same offices in Local 468 as they had theretofore held in Local 188, but for terms of three years. The vote of those present on these extraordinary resolutions was about seventy-four to six. The vote on the election of these officers was fifty-five to twenty-seven. John P. Spry, Sr., the present Business Manager of Local 188, and about five other members who were present opposed this entire proceeding.

After that meeting, Local 468 operated under its charter. Its officers appropriated and retained on its behalf all of the money, assets, books and records theretofore held and used by Local 188. They further physically held the old charter of Local 188, yet they undertook to obtain contracts with the breweries and distributors for and in the name of the new association—Local 468.

When this unauthorized and unusual action became generally known to the members at large of Local 188, it was promptly repudiated by a distinct majority. Within less than two weeks one hundred and fifty or more had signed writtten evidence of their loyalty to Local 188 and their desire that it act as their bargaining agent with the breweries and distributors where its members were employed.

In fact, though appellants claim that about eighty voted for the secession and reorganization of April 23, 1946, it appears that about thirty of that number never actually joined Local 468 but adhered to their membership in Local 188.

Demand in writing was made by a representative of International, the parent organization, that appellant A. G. Godwin of Local 468 immediately return the property, cash, records and contracts that had been owned and held by Local 188 to the local representative of International. Upon failure to comply with this request, suit was promptly filed by appellees. They allege that Local 188 never ceased to exist and that the action taken on April 23, 1946, was unwarranted and unauthorized on the part of the officers and members who participated therein. They assert that the cash, assets, property, records, and charter of Local 188 still belong to that association and that it is the rightful holder of the contracts with the several breweries and distributors theretofore held by it. The prayer of the bill is that Local 468 and its officers be enjoined from interfering with the contracts; that an accounting be had of the funds and property appropriated by appellants and that they be returned to appellees, and for general relief.

The appellants demurred to and answered the bill. They also filed a cross-bill claiming all of the cash, assets, property and records, and asserted their right to the agreements and contracts with the breweries and distributors.

The demurrer challenged the jurisdiction of the court on the ground that:

A. The contracts with the breweries and distributors had to do with the wages, hours, etc., of the workmen and were therefore solely under the control and jurisdiction of the National Labor Relations Board.

Appellants in their grounds of demurrer also assert:

B. That the appellees have an adequate remedy at law, and

C. That no sufficient cause of action is alleged.

All of the contracts with the breweries and distributors by their own limitation expired on or before June

30, 1947, and in these expired contracts no litigant thereafter had any right or interest. It now conclusively appears that the controversy as to which local union was entitled to exercise rights under these contracts no longer exists. Therefore the question raised by the demurrer—that the National Labor Relations Board has sole jurisdiction concerning the contracts—is now wholly moot and need not be decided. *Franklin* v. *Peers,* 95 Va. 602, 29 S. E. 321; *Hankins* v. *Virginia Beach,* 182 Va. 642, 29 S. E. (2d) 831.

We are of opinion that the circumstances recited and facts alleged under which appellees claim they are entitled to the cash, assets, property, books and records present sufficient cause to justify equitable relief.

The right of an unincorporated association to sue is expressly given by sec. 6058 of the Code of 1942 (Michie). The two appellees assert a common ground for relief against appellants, who, under the allegations of the bill, hold as constructive trustees for appellees. Whether the individual appellants still hold the funds and property or have transferred them to Local 468 is immaterial.

The circumstances surrounding the meeting of April 23, 1946, are involved and perplexing. However, the facts alleged are in effect that the individual appellants and Local 468 acquired, retain and hold funds, bonds, dues book and records of appellees under such circumstances as to give rise to a constructive trust in favor of appellees.

In Restatement of the Law, Restitution, sec. 160, p. 642, resort to equity under such circumstances is expressly approved.

" * * * a quasi-contractual obligation and a constructive trust closely resemble each other, the chief difference being that the plaintiff in bringing an action to enforce a quasi-contractual obligation seeks to obtain a judgment imposing a merely personal liability upon the defendant to pay a sum of money, whereas the plaintiff in bringing a suit to enforce a constructive trust seeks to recover specific property. * * * "

And at p. 645 of this work we find:

■ "Even though what is transferred is money or a chattel which is not unique, the payor or transferor is entitled to maintain a proceeding in equity for specific restitution if the payment or transfer was procured by an abuse of a fiduciary or confidential relation."

That a constructive trust was created under the facts alleged and may be enforced in equity is likewise made certain by the following authorities and treatises: *Porter* v. *Shaffer*, 147 Va. 921, 133 S. E. 614; *Carleton Min., etc., Co.* v. *West Virginia Northern R. Co.*, 113 W. Va. 20, 166 S. E. 536; Lile's Notes on Equity Jurisprudence, p. 53; 26 R. C. L., Trusts, secs. 78, 82 and 216; Hoggs Equity Principles, p. 738; Scott on Trusts, Vol. 3, p. 2318; Vol. 4, Pomeroy's Equity Jurisprudence, 5th ed., p. 101; 9 Va.-W. Va. Digest, Trusts and Trustees, pp. 680, 756 and 758, and cases cited, and 45 W. Va. Law Quarterly, p. 357.

Upon the fundamental issue of what force and effect is to be given the proceedings of April 23, 1946, appellants insist that, as the action through which they claim the funds and property in dispute took place at a regular meeting, it was within the scope thereof and is valid in all respects. In fact it is argued that because the by-laws of Local 188 provided that fifteen should constitute a quorum, a majority of such quorum, viz., eight members, could have regularly and legally accomplished what was done.

The action taken really constituted more than a mere reorganization of Local 188. It consisted of a change of name, cancellation of the existing charter, repudiation of its parent organization by affiliation with another organization and acceptance of a new charter, the appropriation of all money, property and records of the former association—Local 188, and the election of officers for terms forbidden by the old constitution. This effectually accomplished a secession and drastic reorganization by the officers joined in by a minority of the members which brought into existence a new and separate association. It was not within the structure or limits of the constitution and by-laws under

which it was attempted, nor within the objects and purposes of the union, and is not binding upon those now objecting thereto.

In 7 C. J. S., "Associations", sec. 6, p. 25, it is said:

"Where, however, an association adopts a new constitution and a new name, elects new officers, changes the amount of dues, and transfers the assets of the old to the new association, the two associations are not identical, and hence members of the old association are not *ipso facto* members of the new."

In accord with the view that notice must be given before such extraordinary proceedings can be had is the text of 18 C. J. S., "Corporations", sec. 544 d (3), page 1230:

"Unless required by the by-laws, where a corporate meeting is stated and general, no notice is ordinarily required of the nature of the business to be transacted. However, where an action of importance, which is extraordinary and outside the usual business transacted at the regular or annual meetings of the stockholders is to be taken, a notice thereof must be given."

The cases cited in note 47 to the above quotation hold that an increase in the number of directors, sale of all of the corporate assets, or amendment of the charter constitute extraordinary business.

That such a radical departure from the purposes and objects of this association as were undertaken to be accomplished at the meeting of April 23rd could not be done without notice to the members is beyond question. By analogy with corporate procedure upon similar matters, we find the prevailing rule thus stated in 5 Fletcher, Cyclopedia of Corporations, p. 47:

"A general meeting is for the transaction of all business incident to the corporate powers and interests, and, in the absence of provision to the contrary, all stated meetings are general and the notice need not specify what is to be considered, unless it be unusual or extraordinary business not ordinarily to be brought up at a general meeting. * * *

" 'It is not usually necessary to give notice of the business to be transacted at a regular annual meeting, * * * but it seems to be the better rule where some unusual business is to be transacted, such as selling all the corporate property, that notice should be given.' *Des Moines Life, etc., Co.* v. *Midland Ins. Co.*, 6 F. (2d) 228."

The necessity for notice attains added weight when the action taken is, as here, out of and beyond the purposes of the association and so radical as to attempt a dissolution in fact. Aside from the necessity of notice to the members of such intended action, there is much authority that it could not be legally accomplished by a mere majority vote. In 7 C. J. S., "Associations", sec. 7, p. 26, we find:

"A transfer of the members and property of the association to another similar organization to the extinguishment of the former .cannot be effected by the vote of a mere majority, especially where a quorum of the association seeks to maintain its existence."

And in sec. 9 (4) on p. 28, we find:

"The withdrawal of one or more members of an association does not *ipso facto* operate as a dissolution of that body, if it is evident that the association was designed to have a continuing existence; and this is so, although the withdrawing members dispose of property, the ownership of which entitled them to admission to membership. Even a withdrawal of a majority of the members in a body does not have this effect if enough members remain loyal to the association to carry out its purposes."

That the proceedings taken by the officers of Local 188 and a minority group of its members without previous notice to the membership of their purpose is not binding upon the absent members or the then protesting members cannot be doubted. It therefore necessarily follows that the attempt of that group, Local 468, and its officers to appropriate and retain the funds and property of Local 188 cannot prevail.

The appellees were entitled to resort to equity for the

enforcement of their rights. That they have factually sustained their claim to the specific funds and property held by appellants convincingly appears from the record.

The decree appealed from is affirmed.

*Affirmed.*