LOUIS TWARDOWSKI, GARLAND H. GILLIS, JAMES E. KENDRICK, CHARLES A. CONWAY, JOHN M. CONWAY, CHARLES W. PARSONS and JOHN M. TAKASH, known as WICK-WIRE GUN & FISHING CLUB,
Plaintiffs,

*vs.*

PAUL W. JESTER,
Defendant.

*New Castle, July 22, 1960.*

*Stanley T. Czajowski,* Wilmington, for plaintiffs.

*George Gray Thouron,* Wilmington, for defendant.

SEITZ, Chancellor: Some time in the summer of 1958, plaintiffs and defendant formed an unincorporated association known as the Wickwire Gun and Fishing Club ("Club"). It was formed to hunt on land leased by the owners of the Wickwire Farm. At that time the Club had certain rules which had not been reduced to writing. Most of those rules dealt with the conduct of the members. One rule provided that the dues would be $120 a year and must be paid by September 1. The members elected officers and defendant was elected president and treasurer. Presumably all the members paid their dues for the 1958-59 hunting season.

While there is some dispute as to whether defendant first obtained the oral lease personally or on behalf of the Club, the fact is that he certainly "tendered" it to the parties as the basis for the formation of the Club. The Club was organized to enable the members to use the leased land and to help defray the expenses thereof. The lease was oral and was for one year. However, it seems to be agreed that, as a matter of custom, the lessee is given a new lease each year if he desires it unless he has abused the property.

At first everything was tranquil. The members performed various work preparatory to the commencement of the hunting season. They built three substantial duck blinds in Wilmington and transported them to the leased land which is located near Earlesville, Maryland. They put a new roof on the cabin on the leased land, painted it and repaired the existing goose pits.

At some stage during the hunting season of 1958-59 tension developed between some members and the defendant. In February, 1959, a meeting was called and at the meeting defendant submitted in writing a proposed list of rules for the Club. The parties seem to have engaged in a strenuous verbal discussion about a rule limiting the bringing of guests to the leased land. There was also some dispute as to whether the Club should incorporate. The meeting reached no conclusion on either subject and broke up with the expectation that there would be a later meeting. However, within a day or two thereafter the defendant sent a letter to the plaintiffs in which he declared that the Club was dissolved as of February 10, 1959, and enclosed a check for those plaintiffs who had credits. In his letter he gave as his reason for dissolving the Club the fact that "a few members would not be satisfied to gun with one another at any time". He based his conclusion on the discussion at the prior meeting.

The plaintiffs then instituted the present action seeking:

1. A mandatory injunction directing the defendant to transfer and convey to plaintiffs the lease defendant has for the hunting rights on the Wickwire Farm or, alternatively;

2. A judgment against defendant in the amount of $1,500 as compensatory damages for conversion of plaintiffs' property and $10,000 as punitive damages for the intentional manner in which defendant has converted plaintiffs' property. Defendant resisted plaintiffs' complaint and this is the decision after final hearing.

I note preliminarily that there are no rules of the Club which deal with the subject of its dissolution. In the absence of such a rule it would seem to be the law that the withdrawal of a part of its members ordinarily would not effect the dissolution of such an association. See 7 *C.J.S. Associations* 9a(4). In order to dissolve, it would seem that the membership would have to receive notice of such contemplated action. See *Miller v. Inter. Union,* 187 *Va.* 889, 48 *S.E.2d* 252, 257. The defendant-president had no right to attempt to unilaterally dissolve the Club, although, he was of course free to resign therefrom. Having determined that defendant's attempt to dissolve

the Club was arbitrary and a legal nullity, where does that leave plaintiffs insofar as the present action is concerned?

■ While defendant renewed the lease for the 1959-60 season and presumably will continue to do so, it appears, as plaintiffs' counsel conceded at the hearing, that the granting of a mandatory injunction compelling the assignment of the lease is not feasible in view of the testimony by the owners that they were willing to lease the land only to defendant; that they held him solely responsible, and would not recognize an assignment. Obviously, this court cannot grant plaintiffs' relief against defendant with respect to the use of the leased land under the conditions which the owners imposed and had the right to impose. If an effective injunction could be issued the court would order it because there is no doubt that the lease was in effect "contributed" to the Club.

■ What about compensatory damages? I think it clear that the availability of the land for hunting by members of the Club was the prime, if not the sole reason for forming the Club. The Club members raised the rent, built the duck blinds and did the other work in the reasonable anticipation that the lease would be renewed from year to year if they desired and if their conduct did not alienate the owners. This was true even though the lease was solely between the owners and defendant. Nevertheless, defendant was entitled to withdraw from the Club. This he, in effect, did and as a result the leased land was no longer legally available to the Club because of the attitude of the owners and the terms of the lease. This case demonstrates that trust and confidence are an adequate substitute for legal commitments only when the sun is shining.

Are plaintiffs entitled to damages? Certainly their proof of compensatory damages is too vague to grant relief. The problem of evaluating the time and materials involved renders the task insurmountable. Plaintiffs' witnesses conceded at an early stage of the trial that the value could not be calculated. Even if it could, the evidence of damages submitted upon the reopening of the record cannot be considered to have adequate foundation to justify a particular sum, even if a conversion was involved.

The parties here "fell out" and defendant took "his bat and went home", thus breaking up the game. While unfortunate, it cannot be said to warrant punitive damages. However, I think the facts justify the imposition of the court costs upon defendant.

Present order on notice.