## HENRY L. MARSH, III, ET AL.

### V.

## CITY OF RICHMOND, EX REL., ETC.

Record No. 840348

September 4, 1987

Present: Carrico, C.J., Poff, Compton, Stephenson, Russell, and Whiting, JJ.,
and Harrison, Retired Justice

*L. B. Cann, III (George B. Little; Carolyn A. H. Bourdow; L. Douglas Wilder; Roger L. Gregory; Little, Parsley & Cluverius, P.C.; Wilder, Gregory & Associates,* on briefs), for appellants.

*J. Durwood Felton, III (William B. Cave; Felton & Cave,* on brief), for appellee.

CARRICO, C.J., delivered the opinion of the Court.

Section 4.01 of the charter of the City of Richmond provides that the members of city council, with "the approval of the council," may be allowed their actual extraordinary expenses incurred in representing the city. Acts 1975, ch. 112. In a resolution adopted effective July 1, 1979, the council authorized the reimbursement of the actual extraordinary expenses incurred by council members during the ensuing fiscal year in an amount not to exceed $250.00 per month for the mayor and $200.00 per month for other council members. In another resolution adopted effective July 1, 1980, reimbursement of similar amounts was authorized for the year ending June 30, 1981, and for each ensuing fiscal year.

Pursuant to the resolutions, a total of $24,400 was paid to five members of the nine-member council for fiscal years 1979-80 and 1980-81.[1] On September 4, 1981, a motion for judgment was filed against the five members[2] by Richmond Independent Taxpayers Association, Inc., Helen G. Brugh, and Charles H. Trexler, Sr., on their own behalf and on behalf of all other taxpayers in the City of Richmond, at the relation of and for the City of Richmond.

In the motion for judgment, the plaintiffs alleged that the payments to the defendants constituted unlawful diversions of public funds of the city. The plaintiffs prayed for recovery of the amounts paid the defendants pursuant to the 1979 and 1980 resolutions.

The trial court heard the matter without a jury. The court awarded the plaintiffs judgment against each of the five defendants for the respective amounts paid during the fiscal years in question, plus interest.

The record shows that in May 1979, the mayor appointed "a special committee of citizens to consider the question of paying an expense allowance to members of City Council." As part of its study, the committee received an opinion from the city attorney stating that "the Council may, if it so desires, reimburse its members their actual expenses extraordinarily incurred in representing the City."

The special committee made its report under date of July 30, 1979,[3] and the first of the two resolutions in question was adopted by council on August 14, 1979, effective the preceding July 1. The resolution authorized the reimbursement to council members of their actual extraordinary expenses in an amount not to exceed $250.00 per month for the mayor and $200.00 per month for each of the other members.[4] The resolution provided that a member

---

[1] One of the resolutions in question was approved by a vote of six to three and the other by a vote of five to four. The five members requesting and receiving reimbursement were those voting in the majority on each occasion. The five-member majority included the mayor.

[2] The five defendants are Henry L. Marsh, III, Willie J. Dell, Henry W. Richardson, Walter T. Kenney, and Claudette B. McDaniel.

[3] When the defendants offered the report of the special committee and the opinion of the city attorney into evidence, the trial court refused to admit both documents. This refusal is the subject of an assignment of error which will be discussed *infra*.

[4] The report of the special committee and the resolutions adopted pursuant thereto concern only the in-town expenses of council members. Out-of-town expenses were reimbursed under a separate provision of State law. *See* Code § 14.1-7.

desiring reimbursement should submit a statement no later than the 20th day of the month for expenses incurred in the preceding month. In order to implement the resolution, a form prepared by the city attorney was prescribed. A completed form submitted by then Mayor Henry L. Marsh for the month of May 1980 was admitted into evidence as an exhibit. It reads:

Date <u>June 5, 1980</u>

I hereby certify that for the month of *May* my extraordinary expenses for which I am entitled to reimbursement pursuant to the provisions of Resolution No. 79-R119-125, August 14, 1979, are *$250* .

<u>[(s)] Henry L. Marsh</u>
Member of Council

Except for the different amount allowed the mayor, each of the other council members requesting reimbursement filed "an identical form" in each of the months of the two-year period in question. No "detailed records" were kept of the expenditures for which reimbursement was claimed, and no proof other than the information set forth on the prescribed form was required.

An exhibit received into evidence detailed "the dollar amounts that each of [the] defendants claim[ed] in each of the categories" of expense for the two-year period. The figures shown on the exhibit were compiled for purposes of this litigation and apparently represent "only estimates of dollar expenditures." The exhibit reads:

| | Dell | Kenney | Marsh | McDaniel | Richardson |
|---|---|---|---|---|---|
| Office Expenses | 1,590 | 2,128 | 24,783 | 8,416 | 2,522 |
| Home Expenses | 1,144 | 1,720 | 2,180 | 2,860 | 3,690 |
| Auto Expenses | 2,312 | 840 | 3,074 | 500 | 2,344 |
| Clothing | 2,000 | 1,000 | N/A | N/A | 1,460 |
| Drycleaning | 175 | 1,200 | 520 | N/A | 1,000 |

| | | | | | |
|---|---|---|---|---|---|
| Entertainment | 360 | 1,000 | 400 | 1,680 | 2,600 |
| Meals Out | 480 | 832 | 2,400 | 1,920 | 2,000 |
| Community Functions | 840 | 720 | 960 | 1,800 | 1,080 |
| Lost Wages | N/A | 720 | 2,000 | 3,000 | N/A |
| Publications | 200 | N/A | N/A | 300 | N/A |
| Miscellaneous | 288 | 120 | 1,000 | 4,130 | 610 |
| Total | $9,389 | $10,280 | $37,317 | $24,606 | $17,306 |
| Total Funds Received for period 7/1/79 through 6/30/81 | $4,000 | $ 4,800 | $ 6,000 | $ 4,800 | $ 4,800 |

The item of $24,783 claimed by former Mayor Marsh for "Office Expenses" represented 25% of the rental and other expenses related to the operation of his law office. He estimated that 25% of the time he spent at his office was devoted to council affairs. The amounts claimed for the same item by other council members represented the cost of maintaining separate offices for the conduct of council business.

The item for "Home Expenses" claimed by all five council members represented 25% of the expenses related to the maintenance and operation of their homes and, except in the case of Mrs. McDaniel, included mortgage payments. The members estimated that they used their homes 25% of the time for council business.

The item of "Auto Expenses" claimed by all five members represented the portion of the cost of operating private automobiles allocated to the conduct of council business. The estimated mileage included trips to and from council meetings.

The item for "Clothing" claimed by three members represented the cost of additional wearing apparel needed for council meetings and other public appearances. The item for "Drycleaning" claimed by four members represented the "extra portion" of drycleaning expenses occasioned by service on council.

"Entertainment" expenses included the estimated cost of entertaining out-of-town visitors and dining with others incident to city-

related business. "Meals Out" represented food costs incurred by council members when unable to dine at home because of council meetings and other council business.

The item for "Community Functions" included the price of tickets for attendance at community affairs. This expense was justified on the basis that council members were expected to appear at community functions.

Three members made claim for "Lost Wages," explained as the value of vacations or annual leave the members were unable to take because of the press of council business. Two members charged for the cost of "Publications" related to the performance of council duties.

All five members made claims under the "Miscellaneous" heading. Charges included child-care expenses and the cost of legal services, postage, photographs, and financial help to constituents. One member claimed $1,500 as the cost of calendars for constituents.

Other evidence in the case showed that the members of council not requesting reimbursement incurred the same types of expense that were claimed by the five-member majority. It was further established that all members of council incurred similar expenses both before and after the two-year period at issue in the present case.

The defendants' assignments of error present three questions:

1. Did the trial court improperly substitute its judgment for the discretion of city council?

2. Did the trial court err in refusing to admit into evidence the report of the special committee and the opinion of the city attorney?

3. Did the trial court erroneously rule that the expenses involved were not extraordinary?

The defendants contend that the trial court exceeded the permissible scope of judicial review and improperly substituted its own judgment for the discretion of city council. The defendants emphasize the clause in § 4.01 of the city charter which provides that the allowance of extraordinary expenses shall be "subject to the approval of the council." They then argue that the clause grants the council broad discretion.

It was conceded in the trial court, the defendants maintain, that city council properly exercised its discretion in finding council members should be reimbursed for extraordinary expenses, in fix-

ing the maximum amount of reimbursement, and in prescribing the procedure for obtaining reimbursement. Council made the further and important finding, the defendants assert, that " 'extraordinary expenses' were being incurred" by council members.

This latter finding, the defendants contend, also involved the exercise of discretion and constituted legislative action entitled to a presumption of correctness. Then, citing *Portsmouth* v. *Chesapeake*, 205 Va. 259, 136 S.E.2d 817 (1964), the defendants argue that the trial court could not disturb council's finding "unless clearly shown to be arbitrary or unreasonable." *Id.* at 266-67, 136 S.E.2d at 823. Yet, the defendants complain, the trial court disturbed the finding despite "an entire absence of any showing" that council's action was arbitrary or unreasonable.

The defendants insist that the "arbitrary or unreasonable" standard is applicable here and that this higher test limits the scope of judicial review of a matter within the discretion of city council. For purposes of this appeal, we will assume, without deciding, that the defendants are correct, and we will apply the "arbitrary or unreasonable" test in determining the validity of city council's action. In the view we take of the case, the result is the same whether the higher standard or some lesser test is applied.

■ Guided by the higher standard and giving the council's action its presumption of correctness, we reject the defendants' complaint that the trial court's decision was rendered in the "entire absence of any showing" of arbitrariness or unreasonableness. We think that when the plaintiffs concluded their evidence, they had made out a prima facie case of arbitrariness or unreasonableness. Indeed, at that point, the defendants moved to strike the plaintiffs' evidence on the ground of insufficiency, but their argument did not include the words "arbitrary" or "unreasonable"; the entire argument consisted of eleven other words: "[T]here [was] insufficient evidence that the expenses submitted were not extraordinary."

■ In any event, when the plaintiffs made their prima facie case of unreasonableness, the burden shifted to the defendants to produce evidence of reasonableness. *See City of Richmond* v. *Randall*, 215 Va. 506, 511, 211 S.E.2d 56, 60 (1975). The defendants say that when they offered evidence on this issue, they were prejudiced by the trial court's refusal to admit the report of the special committee and the opinion of the city attorney.

The defendants argue that the report and the opinion were admissible because the term "extraordinary" is ambiguous and the documents would have resolved the ambiguity. The excluded evidence, the defendants say, represents legislative history, which is generally admissible on the question of legislative intent. The evidence involved here, the defendants maintain, not only would have illuminated "the precise meaning [of the term "extraordinary"] intended by City Council" but also would have demonstrated "the reasonableness of and factual basis for City Council's action in passing the Resolutions."[5]

The difficulty with this argument is twofold. In the first place, it is not the intent of the city council in adopting the resolutions that is relevant here. Rather, it is the intent of the General Assembly in enacting § 4.01 of the city charter that is pertinent. Hence, we test the reasonableness of council's action not by the circumstances surrounding the adoption of the resolutions but by determining whether the action comports with the intent expressed in the city charter.

Second, if statutory language is not ambiguous but has a usual and plain meaning, rules of construction do not apply and resort to legislative history is both unnecessary and improper. Instead, we determine legislative intent from the plain meaning of the words used. *State Board for Contractors* v. *Sedwick Building Supply Co.*, 234 Va. 79, 83, 360 S.E.2d 169, 171 (1987); *School Board* v. *State Board*, 219 Va. 244, 250-51, 247 S.E.2d 380, 384 (1978).

We think the term "extraordinary" is not ambiguous but has a usual and plain meaning. On several previous occasions, we

---

[5] The report of the special committee stated in part:

The growth of government functions on the local level has been rather substantial over the last few years. Council meetings have become longer, committee assignments have become more numerous, citizen demands on the Mayor and members of Council have become heavier, and the complexity of the issues to be resolved has become much more intricate than in the past.

* * * *

The district system of electing members of Council has added to this burden on each member of the Council. The nature of the district system, in which each member of Council represents a specific area and group of citizens in the City, has placed more time demands, has required more personal appearances, has often required an office in which to meet constituents and generally increased the routine expenses of the Mayor and members of Council.

have defined the term handily, without resort to extrinsic evidence.

In *Dir.-Gen. R. R.* v. *Bryant's Adm'r*, 127 Va. 651, 661, 105 S.E. 389, 392 (1920), an action for wrongful death due to drowning, we said that an extraordinary flood " 'is one which men of ordinary prudence would not have anticipated and provided for.' " (Citation omitted.) In *City of Portsmouth* v. *Weiss*, 145 Va. 94, 115, 133 S.E. 781, 787 (1926), an action for property damage following a heavy rainfall, we approved a definition of an extraordinary rainfall as one that is "so unusual . . . that men of ordinary prudence would not have anticipated and provided for [it]." And in *Miller* v. *Union of United Brewery*, 187 Va. 889, 899, 48 S.E.2d 252, 256 (1948), involving a dispute over the ownership of corporate assets, we stated that extraordinary corporate action requiring notice to stockholders means " 'action of importance, which is . . . outside the usual business transacted at the regular or annual meetings of the stockholders.' " (Citation omitted.)

In our research, we even found a definition of the term "extraordinary expenses." In *Black's Law Dictionary* 527 (5th ed. 1979), the term is defined, albeit in a constitutional context, as meaning "other than ordinary expenses and such as are incurred by the state for the promotion of the general welfare, compelled by some unforeseen condition which is not regularly provided for by law, such as flood, famine, fire . . . ."

■ Simply put, the term "extraordinary expenses" means expenses that are unusual, out of the ordinary, unanticipated. The defendants do not offer a different definition, but stake their entire case upon the proposition that expenses may be extraordinary either in kind *or* in degree or amount and that the expenses involved here are extraordinary in amount. During oral argument, counsel for the defendants conceded the claimed expenses "are not extraordinary in kind," but argued that "these expenses became extraordinary because they reached such high levels."

■ We do not question that, as a general rule, something may be extraordinary solely because it is unusual or out of the ordinary in degree or amount. This was the way we applied the term "extraordinary" with respect to floods and rainfall in the *Dir.-Gen.* and *Weiss* cases. But this general rule must be applied discreetly in particular situations, else absurd results might ensue.

In our opinion, the present case requires such discreet application to the subject of expenses. To apply the general rule blindly to this subject might produce the absurd result that an item of expense, admittedly not of a kind or type intended by the General Assembly to be reimbursable and, in this sense, not extraordinary, may yet be found extraordinary and hence reimbursable simply because the claimant expends an exorbitant amount on the item.

We can say with certainty that in enacting § 4.01 of the city charter, the General Assembly did not intend such an absurd result. We think the legislative intent is clear from the unambiguous words used in the enactment: Council members may be allowed reimbursement for actual expenses which are extraordinary in kind and type only.

Because the language of the charter section is not ambiguous, it follows that the trial court did not err in refusing to admit into evidence the report of the special committee and the opinion of the city attorney. And, because the defendants concede (properly so, we think) that the expenses they claim are not extraordinary in kind or type, it also follows that the trial court did not err in ruling that the expenses were not extraordinary within the meaning of § 4.01 of the city charter.

Accordingly, we will affirm the judgments of the trial court.

*Affirmed.*

POFF, J., dissenting.

I dissent from the decision the majority has reached. I agree that the trial court properly excluded the report of the blue ribbon committee. At trial, the central issue was what the General Assembly intended by the use of the word "extraordinary" when it added that word to section 4.01 of the City's charter in 1975. That was four years before City Council created the blue ribbon committee, and the committee's report is irrelevant to the dispositive issue.

I reject the defendants' argument that the trial court "exceeded the permissible scope of judicial review". Although the scope of judicial review of the legislative acts of a local governing body is narrowly defined, it is peculiarly the function of the courts to determine the meaning of statutory language which "is reasonably

capable of being understood in two senses." *Armstrong* v. *Erasmo*, 220 Va. 883, 890, 263 S.E.2d 655, 658 (1980). In my view, "extraordinary expenses" is such language.

I believe the trial court erred in the construction it placed upon the City's charter. The court based its judgment on the conclusion that, when used to modify the word "expenses", the word "extraordinary" imports a difference in kind rather than a difference in amount and only a difference in kind. Invoking a dictionary definition of the term "extraordinary expenses", the majority reaches the same conclusion. Considering what I perceive to be the legislative purpose the General Assembly sought to achieve, I do not think it intended such a restrictive interpretation of the term. In my view, the legislative purpose was to authorize the City to reimburse public servants the costs added to their personal budgets on account of the performance of their public duties, whether such costs were different in kind or different in amount from personal expenses ordinarily incurred.

I find no evidence of record which contradicts the defendants' claims that they incurred such expenses and that such expenses exceeded the maximum reimbursable under City Council's resolutions. Accordingly, I would reverse the judgment and enter final judgment dismissing the action filed against the defendants.

COMPTON, J., joins in dissent.