HALEY, J.,
dissenting.
I respectfully dissent. I would hold Code § 65.2-708(0 provides only one extension of the statute of limitations contained in Code § 65.2-708(A) per compensable injury. Since the time provided by the statute of limitations, even with the extension contained in subsection C, expired before Gordon filed his claim, I would hold Gordon’s claim time-barred.
In relevant part, Code § 65.2-708 states:
A. Upon its own motion or upon the application of any party in interest, on the ground of a change in condition, the Commission may review any award and on such review may make an award ending, diminishing or increasing the compensation previously awarded, subject to the maximum or minimum provided in this title, and shall immediately send to the parties a copy of the award.... No such review shall be made after twenty-four months from the last day for which compensation was paid, pursuant to an award under this title....
*375 C. All wages paid, for a period not exceeding twenty-four consecutive months, to an employee (i) who is physically unable to return to his pre-injury work due to a compensable injury and (ii) who is provided work within his capacity at a wage equal to or greater than his pre-injury wage, shall be considered compensation.
When examining the meaning of a statute, we look first to its plain language. Alcoy v. Valley Nursing Homes, Inc., 272 Va. 37, 41, 680 S.E.2d 301, 303 (2006). To this end, “we examine the statute in its entirety, rather than by isolating particular words or phrases.” Earley v. Landsidle, 257 Va. 365, 369, 514 S.E.2d 153, 155 (1999). The Court assumes the General Assembly carefully chose the terms used. Simon v. Forer, 265 Va. 483, 490, 578 S.E.2d 792, 796 (2003). . We may not “add language to the statute the General Assembly has not seen fit to include,” Jackson v. Fid. & Deposit Co., 269 Va. 303, 313, 608 S.E.2d 901, 906 (2005) (citation omitted), or give statutory terms of definite meaning “a construction that amounts to holding that the General Assembly meant something other than that which it actually expressed,” Lee County v. Town of St. Charles, 264 Va. 344, 348, 568 S.E.2d 680, 682 (2002). When the statutory language is clear, “we are bound by the plain meaning of that language.” Vaughn, Inc. v. Beck, 262 Va. 673, 677, 554 S.E.2d 88, 90 (2001). The statutory interpretation at issue here concerns a pure question of law and so we review the commission’s decision de novo. Town of Waverly Law Enforcement v. Owens, 51 Va.App. 277, 280, 657 S.E.2d 161, 163 (2008).
Code § 65.2-708(C) states that when an employee lacks the physical ability to perform his work because of a compensable injury, his employer provides him with other work suitable to his new capacity, and the wages from that work equal or exceed the pre-injury pay, those wages toll the statute of limitations for filing a change-in-condition application under Code § 65.2-708(A) up to twenty-four months. See Scott v. Scott, 16 Va.App. 815, 818, 433 S.E.2d 259, 261 (1993). An *376 employee meeting the statutory conditions receives “an additional twenty-four months before the statute of limitations of Code § [65.2-708(A)] begins to run.” Greene v. Gwaltney of Smithfield, Inc., 13 Va.App. 486, 492, 413 S.E.2d 650, 654 (1992). Code § 65.2-708(C) “operates solely to extend the limitation period of Code § [65.2-708(A)j---- Code § [65.2-708(C)] has no applicability, except with reference to Code § [65.2-708(A)].” Cohen v. Fairfax Hosp. Ass’n, 12 Va.App. 702, 707, 407 S.E.2d 329, 332 (1991). The General Assembly enacted Code § 65.2-708(C) “to prevent employers from lulling partially disabled workers into a false sense of security ... by providing employees light duty work at their pre-injury wage for two years and then terminating the employee without liability for future disability benefits.” Nguyen v. Fairfax County Bd. of Supervisors, 26 Va.App. 100, 103, 493 S.E.2d 391, 392 (1997) (citation omitted).
I would hold that the language of Code § 65.2-708(C) provides only one extension of the statute of limitations contained in Code § 65.2-708(A) per compensable injury. The Code contains this limitation by authorizing tolling of “a period not exceeding twenty-four consecutive months.” Code § 65.2-708(C) (emphasis added).
Although the majority holds the General Assembly intended to permit multiple periods of extension, our case law shows the language of “a period” contemplates only one period. Our Supreme Court addressed this issue in Corns v. School Board of Russell County, 249 Va. 343, 454 S.E.2d 728 (1995). There the Court considered the meaning of statutory language requiring “[a] probationary term of service for three years” for teachers. Id. at 349, 454 S.E.2d at 732. The Court held that while the phrase “service for three years” could “be interpreted as service in each of three intermittent school years ... [t]he words ‘a term’ mean one such period.” Id.; see also Van Dresser v. Firlings, 305 Mass. 51, 24 N.E.2d 969, 970 (1940) (“The word ‘period’ as applied to time carries with it the idea of the separation of a designated interval of time from the flow of time in general. The words ‘a period’ do not readily expand to include an irregular succession of times or periods of *377 varying length----”). As applied here, the language in Code § 65.2-708(C) of “a period” likewise means one period. It was not necessary for the General Assembly to use the word “one” to indicate one period.
If the General Assembly had intended to permit multiple periods of tolling under Code § 65.2-708(C), it could have easily done this by writing the statute to authorize “periods not exceeding twenty-four consecutive months.” It seems more rational to use the plural to mean the plural than to use the singular to mean the plural, as the majority holds. Long ago Justice Hudgins suggested as much when he remarked that “it would be unreasonable to state that ‘periods’ refer to ‘one single term.’” Hudson v. Youell, 179 Va. 442, 465, 19 S.E.2d 705, 716 (1942) (Hudgins, J., dissenting); cf. Rasmussen v. Commonwealth, 31 Va.App. 233, 237-39, 522 S.E.2d 401, 403-04 (1999) (holding that where a scientific test took multiple samples to produce a single result and the statute gave the defendant the right to observe the “breath test,” “sample,” and “blood alcohol reading,” phrased in the singular, the defendant only had the right to see the final printed result).
When combined with the language of a single period, the statutory grant of an extension “not exceeding twenty-four consecutive months” also evidences an intent to limit tolling to a defined period. Code § 65.2-708(C) (emphasis added). The term “not exceeding” is defined: “Usually a term of limitation only, denoting uncertainty of amount.” Black’s Law Dictionary 1061 (6th ed. 1990). Our Supreme Court has referred similarly to the term, calling it “clear words of limitation.” Southern Ry. Co. v. Commonwealth, 206 Va. 831, 836, 147 S.E.2d 72, 75 (1966). Another court stated that “not exceeding” means an amount “shall not be more, but may be less.” Stuyvesant Ins. Co. v. Jacksonville Oil Mill, 10 F.2d 54, 56 (6th Cir.1926). The court remarked that any other interpretation “does violence to the plain and unambiguous language.” Id. Still another court held that where a contract required a company to operate a business “for a period ‘not to exceed sixty days,’ ” any amount up to sixty days satisfied the contract. Union Liquors, Inc. v. Finkel & Lasarow, Inc., 44 *378 Cal.App.2d 706, 113 P.2d 19, 21 (1941). Thus, the words “not exceeding” in Code § 65.2-708(C) reveal the General Assembly’s intention to limit the tolling of the statute of limitations to up to, but no more than twenty-four consecutive months. See also Rohanna v. Commonwealth, 168 Va. 696, 701, 190 S.E. 171, 173 (1937) (holding that where a statute authorized a court to require a criminal defendant to give a bond for “a term not exceeding one year,” the court lacked power to require bonds beyond the term of the initial year); Cox v. Hagan, 125 Va. 656, 680, 100 S.E. 666, 674 (1919) (using “not exceeding” to refer to up to a maximum amount). Twenty-four consecutive months represents the maximum extension.
The majority’s conclusion that the term “consecutive” means the period of extension described in Code § 65.2-708(C) runs until reaching twenty-four months ignores the statutory language of “not exceeding.” “The words ‘not exceeding,’ in themselves, are words not of grant or apportionment, but of limitation only, and standing alone are ordinarily so construed.” City of Kingsville v. Meredith, 103 F.2d 279, 281-82 (5th Cir.1939); see also Boston & M.R.R. v. United States, 265 F. 578, 579 (1st Cir.1920). “The words denote uncertainty of amount. Such language imposes no duty to adopt the maximum amount rather than some lesser amount authorized.” Saxhaug v. County of Jackson, 215 Minn. 490, 10 N.W.2d 722, 724 (1943) (citation omitted). The plain meaning of a term “not exceeding twenty-four consecutive months” is a period up to, but no more than twenty-four consecutive months.[9] See Chiles v. Phelps, 714 So.2d 453, 459 (Fla.1998) (stating that a provision of the Florida Constitution limiting special sessions of the legislature to a period that “shall not exceed twenty consecutive days” set “only outer limits on the length of special sessions”). Any length of time from a day to two years *379 is a period not exceeding twenty-four consecutive months. As the dictionary states, the time is unspecified. Yet for the majority, the statute specifies a twenty-four-month period. This changes the language of “a period not exceeding twenty-four consecutive months” to “a period equal to twenty-four consecutive months.” I cannot reconcile “not exceeding” with “equal to.”
It may be objected that the statute could allow multiple single periods not exceeding twenty-four consecutive months based on new awards consistent with the above interpretation of language. Such an objection fails because of the absurd results it produces plainly contrary to the intent of the General Assembly.
Indeed, an enormous problem in this case is that both the majority and commission interpretations cause potentially absurd results under the statute. Our Supreme Court has repeatedly cautioned that “a statute should never be construed in a way that leads to absurd results.” Meeks v. Commonwealth, 274 Va. 798, 802, 651 S.E.2d 637, 639 (2007). An absurd result is one “in which the law would be internally inconsistent or otherwise incapable of operation.” Cook v. Commonwealth, 268 Va. 111, 116, 597 S.E.2d 84, 87 (2004). Our Supreme Court construed language to avoid absurd results in Marsh v. City of Richmond, 234 Va. 4, 360 S.E.2d 163 (1987). There a city charter permitted city council members to be reimbursed for their extraordinary expenses. Id. at 5, 360 S.E.2d at 164. The Court held the General Assembly intended that only unusual, unforeseen expenses had eligibility for reimbursement. Id. at 12, 360 S.E.2d at 168. The Court acknowledged some expenses could be extraordinary simply because of the great expense incurred, but warned this situation would be rare. Id. To allow ordinary large expenses eligibility for reimbursement “might produce the absurd result that an item of expense, admittedly not of a kind or type intended ... to be reimbursable and, in this sense, not extraordinary, may yet be found extraordinary and hence reimbursable simply because the claimant expends an exorbitant amount on the item.” Id. at 13, 360 S.E.2d at 168. “[T]he *380 General Assembly did not intend such an absurd result.” Id. Similarly, in Valley Acceptance Corp. v. Glasby, 230 Va. 422, 431, 337 S.E.2d 291, 296 (1985), the Court found an absurd result would occur where a party could “escape the Act by doing exactly what it forbids.” It is apparent from these cases that where a construction would plainly go contrary to legislative intent in a substantial number of instances, such an interpretation represents an absurd result a court should avoid.
The majority’s holding causes absurd results for several reasons. First, by holding tolling re-starts upon each award, the majority permits those having benefits reinstated after a termination for non-compliance with the Workers’ Compensation Act to benefit from that disobedience.[10] The notion that a court could construe a statute in a way so that violating the statute could work in a person’s self-interest was expressly *381 repudiated in Valley Acceptance Corp. Second, the majority’s holding inverts the purpose of the statute of limitations by least aiding those the statute seeks to protect and most assisting those not requiring protection. As previously noted, Code § 65.2-708(C) exists “to prevent employers from lulling partially disabled workers into a false sense of security ... by providing employees light duty work at their pre-injury wage for two years and then terminating the employee without liability for future disability benefits.” Nguyen, 26 Va.App. at 103, 493 S.E.2d at 392 (citation omitted). Employees diligent in asserting their rights obviously lack a risk of having a “false sense of security.” Nonetheless, the majority’s holding benefits them the most by giving a new tolling period for each award.[11] Conversely, employees at risk of being lulled into complacence receive the fewest tolling periods. This type of inverted result goes against the holding of Marsh that statutes are to be construed consistently with their purpose. Third, the majority’s holding permits employees to obtain twenty-four-month tolling periods indefinitely into the future since any award for any small period of time, even for something like a doctor’s appointment, gives an employee a new period of tolling.[12]
*382 The commission’s interpretation may cause absurd results since even such a brief break for a doctor’s appointment instantly terminates the single twenty-four-month period.[13] This could happen to many employees soon after returning from an injury, making the tolling period meaningless because of its brevity.
Thus, in the interpretations of both the majority and the commission, the General Assembly’s plain intent that employees receive a limited period of tolling fails in a manifest way, rendering the statute “incapable of operation.” Cook, 268 Va. at 116, 597 S.E.2d at 87.
To avoid these pitfalls and effectuate the intent of the General Assembly, which represents “the paramount object of statutory construction,” Vollin v. Arlington County Electoral Bd., 216 Va. 674, 678-79, 222 S.E.2d 793, 797 (1976), I would hold the statute provides a single twenty-four-month period of tolling per compensable injury and that earnings at or above pre-injury levels from any light-duty work falling within these twenty-four months are considered compensation, regardless of whether any new awards or breaks from work occur within this period. The tolling begins when an employee returns to light-duty work at or above his pre-injury wages.[14] For the *383 next twenty-four months, those earnings are considered compensation. If the employee temporarily leaves work and then returns, the wages remain compensation. However, the single twenty-four month period permanently ends for that injury twenty-four-months from the start of light-duty work at or above pre-injury wages.
This interpretation also accords with the principles of language expressed above. The statute’s language of “a period” finds fulfillment in a single period. The period does not exceed twenty-four months. Furthermore, the period is up to, but not exceeding twenty-four months since an employee could leave work and not return before the period’s expiration. Such an employee would receive less than the full period in tolling. Finally, the twenty-four months run consecutively.
Support for this interpretation as the fulfillment of the General Assembly’s intent becomes clearer when considered in light of workers’ compensation jurisprudence from other jurisdictions.
Although Code § 65.2-708(C) became effective in 1989, the principle it contains has a long history. During the Great Depression, in Morrison v. Industrial Accident Commission, 29 Cal.App.2d 528, 537, 85 P.2d 186 (1938), it was written that “payment of wages to [an injured employee] ... is likely to lull him into false hopes and cause him to delay presenting his claim until the statute of limitations has barred it.”
To remedy these perceived ills, payments of wages to injured employees were held to toll the statute of limitations. Precisely when these wages operate a tolling, however, differs among jurisdictions. One leading treatise has summarized a general rule in this way: “A theoretically correct rule ... would be this: Payment of wages tolls the statute if it was intended to be made on account of compensation liability, or if *384 the employee reasonably believed it was so intended.” 7 Arthur Larson & Lex K. Larson, Larson’s Workers’ Compensation Law § 126.07[12] (2004).
In enacting Code § 65.2-708(C), the General Assembly recognized the policy concerns necessitating the statute, but rejected case-specific factual inquiries in favor of a bright-line rule. Wages at or above pre-injury levels paid to an injured employee performing light-duty work are now considered compensation for up to twenty-four consecutive months. The statute balances the interests of employees and employers by (1) providing an automatic tolling for up to twenty-four consecutive months, while (2) limiting the tolling period to twenty-four consecutive months.
The majority’s holding eviscerates the balance struck by Code § 65.2-708(C). Rather than providing a rule for the benefit of employees and employers, the majority gives employees an essentially indefinite statute of limitations to file a change-in-condition application. While I recognize we liberally construe the Workers’ Compensation Act, Masonite Holdings, Inc. v. Cubbage, 53 Va.App. 13, 19, 668 S.E.2d 809, 812 (2008), that does not mean we ignore other considerations.[15] As our Supreme Court has stated, the Act represents “a carefully balanced societal exchange between the interests of employers, employees, insurers, and the public.” Morris v. Morris, 238 Va. 578, 584, 385 S.E.2d 858, 862 (1989). It is also notable that the Act provides that of the three commission members, only one shall represent employees and only one shall represent employers. Code § 65.2-200(D).
In summary, the language of Code § 65.2-708(0 provides one period of extension per compensable injury from the statute of limitations in Code § 65.2-708(A). The language *385 authorizing “a period” rather than “periods” denotes a single period. Taken together, the words “not exceeding” and “consecutive” show the General Assembly desired an extension of the statute of limitations up to but no greater than twenty-four consecutive months. The twenty-four-month period starts when an employee begins light-duty work at or above pre-injury pay and the earnings from such work in the ensuing twenty-four months are considered compensation, regardless of whether breaks in work or other awards occur. After twenty-four months, the employee may not receive additional tolling for the injury that caused the tolling to occur.
Here Gordon returned to light-duty work earning at or above his pre-injury wages in October 2000. This started the twenty-four-month tolling provision of Code § 65.2-708(C). For the next twenty-four months, the Code considered any wages Gordon received in this work at or above his pre-injury pay to be compensation. The twenty-four-month period expired in October 2002 and could not be renewed thereafter based on the January 2000 injury. However, since Gordon last received payment pursuant to an award in February 2003, he had until February 2005 to file an application based on a change in condition. Yet Gordon did not file his application until September 2006.[16] This fell outside the time provided by the statute of limitations, and the commission correctly held the application time-barred.
For the foregoing reasons, I would affirm the judgment of the commission.

. Consecutive is defined: "Successive; succeeding one another in regular order; to follow in uninterrupted succession.” Black's Law Dictionary, supra, at 304; see also Hudson, 179 Va. at 465, 19 S.E.2d at 715 (Hudgins, J., dissenting) (quoting Webster’s International Dictionary to define "consecutive” as " '[Hollowing in a train; succeeding one another in a regular order; having no interval or break; sequent’ ”).

. An example of a way that an employee could gain a new tolling period under the majority’s holding by violating the Act is found in Code § 65.2-607. That section states:
A. After an injury and so long as he claims compensation, the employee, if so requested by his employer or ordered by the Commission, shall submit himself to examination, at reasonable times and places, by a duly qualified physician or surgeon designated and paid by the employer or the Commission....
B. If the employee refuses to submit himself to or in any way obstructs such examination requested by and provided for by the employer, his right to compensation and his right to take or prosecute any proceedings under this title shall be suspended until such refusal or objection ceases and no compensation shall at any time be payable for the period of suspension unless in the opinion of the Commission the circumstances justify the refusal or obstruction.
Under the majority’s holding, if an employee unreasonably refused a medical exam and so had benefits suspended, but then agreed to the exam, a new award ordering reinstatement of benefits would renew the tolling period, even though the issue only arose at all because of the employee’s disobedience to the Act. Such a result is plainly erroneous, for a person may not extend the tolling provisions otherwise applicable in the Act "by doing exactly what it forbids.” Valley Acceptance Corp., 230 Va. at 431, 337 S.E.2d at 296.
While it is true that reinstatement of compensation after an employee’s breach of the Act resulted in termination would toll the statute of limitations under subsection A, such tolling would occur with or without the employee's disobedience. On the other hand, the employee *381 would not receive a new award—and hence an additional twenty—four months of tolling under subsection C-without the disobedience.

. The commission's opinion also recognized that extending the tolling period upon later awards does not accord with the purpose of the Act. The commission wrote:
Moreover, the purpose of Virginia Code 65.2-708(C) is to deter an employer from gaining an advantage by bringing an employee back to light duty at pre-injury wages and then terminating him after the statute of limitations has expired. We do not believe this purpose is served by interpreting the statute to provide that the tolling provisions begin to run anew after later periods of awarded disability. There was no finding that the claimant was lulled into a false sense of security causing his filing to be delayed. Additionally, the claimant has not been terminated by the employer.
(Citations and internal quotation marks omitted). I agree with the commission in this regard.

. It is true that such brief absences could have the same indefinite tolling effect under Code § 65.2-708(A). Yet subsection A is not limited *382 to a period not exceeding twenty-four consecutive months, whereas subsection C is. For this reason and reasons expressed later in this dissent, indefinite tolling under subsection C is problematic.

. In Crites v. Slurry Pavers, Inc., VWC File No. 202-99-47 (Feb. 15, 2005), cited with favor in the commission’s decision here, the claimant returned to work from a compensable injury in June 2001. He was laid off in November 2001, but returned to work in 2002. The commission stated "the statute of limitations was tolled for the consecutive period that he continued to earn his pre-injury wage while performing restricted duty—that is, until he was laid off in November of 2001.” This constituted the "consecutive period of receiving 'compensation' from the employer as contemplated by Code § 65.2-708(C).” In Phelps v. Safeway Stores, Inc., 77 OWC 138 (1998), also cited with favor in the commission’s Gordon opinion, the commission wrote that Code § 65.2-708(C) "applies to the twenty-four consecutive months after a claimant returns to light-duty work without a wage loss.”

. I note I do not read the majority’s opinion, as Ford does on brief, to hold the relevant date for re-starting tolling to be the date of the award. *383 Rather, the date the majority holds re-starts tolling is the date an employee returns to light-duty work at or above pre-injury pay after a period for which compensation has been or will be awarded. See Code § 65.2-708(A). As the majority states, the statute of limitations “is triggered on the last day for which compensation was paid.”

. The workers’ compensation regime is wholly a creature of statute. E.I. du Pont de Nemours & Co. v. Eggleston, 264 Va. 13, 17, 563 S.E.2d 685, 687 (2002). This Court does not re-weigh the General Assembly's consideration of competing interests, for "[t]he calculus of effects, the manner in which a particular law reverberates in a society, is a legislative and not a judicial responsibility.” Pers. Adm’r of Mass. v. Feeney, 442 U.S. 256, 272, 99 S.Ct. 2282, 2292, 60 L.Ed.2d 870 (1979).

. As noted in the majority’s opinion, Gordon also earned greater than his pre-injury wage from April to June 2002. Even using these dates, the statute of limitations still bars Gordon's claim since he would have needed to file by April 2006.