**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

TEXACO INC.,
            *Plaintiff-Appellee,*

            v.

UNITED STATES OF AMERICA,
            *Defendant-Appellant.*

No. 06-16098

D.C. No.
CV-04-00316-SBA

OPINION

Appeal from the United States District Court
for the Northern District of California
Saundra B. Armstrong, District Judge, Presiding

Argued and Submitted
April 17, 2008—San Francisco, California

Filed June 13, 2008

Before: Procter Hug, Jr., Mary M. Schroeder, and
Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Callahan

## COUNSEL

Eileen J. O'Connor, Assistant Attorney General, Richard T. Morrison, Deputy Assistant Attorney General, Nathan J. Hochman (argued), Gilbert S. Rotherberg, Richard Farber, and Judith A. Hagley, of Washington, D.C., for the defendant-appellant.

William L. Goldman (argued), Robin L. Greenhouse, and Michael F. Kelleher of McDermott Will & Emery LLP of Washington, D.C., and Joseph H. Selby of McDermott Will & Emery LLP of Boston, Massachusetts, for the plaintiff-appellee.

**OPINION**

CALLAHAN, Circuit Judge:

This appeal requires that we undertake the task of interpreting a provision of the Internal Revenue Code, 26 U.S.C. § 1341. In essence, this statute allows a taxpayer, who is required to pay to a third party income on which it has already paid income tax, credit for the tax it paid on that income. Subsection (b)(2), however, provides that this credit is not available "with respect to an item which is included in gross income by reason of the sale [of inventory]." 26 U.S.C. § 1341(b)(2).

Texaco Inc.[1] sought a tax refund of $101,043,085 under 26 U.S.C. § 1341(a) because it was required to pay out pursuant to a settlement agreement with the Department of Energy sums that it had previously included in its gross income. The government denied the refund claims on the ground that the inventory exception in § 1341(b)(2) barred Texaco from using § 1341(a). Texaco brought suit challenging the denial. The district court agreed with Texaco and ordered the government to pay the refund. The government appeals and we reverse. We hold that the language in § 1341(b)(2) plainly precludes Texaco from using the computation of tax set forth in § 1341(a).

## I.  Background

Texaco was engaged in an integrated petroleum business. Between 1973 and 1981, Texaco made certain sales of crude petroleum and refined petroleum products at prices that exceeded the price ceilings set by federal petroleum price regulations. Texaco included these overcharges as gross income on its corporate tax returns for the years 1973 through 1981.

---

[1] On October 9, 2001, Texaco Inc. became a wholly-owned, indirect subsidiary of ChevronTexaco Corporation.

The Department of Energy (DOE) took various administrative actions against Texaco which eventually resulted in a consent degree requiring Texaco to pay $1,250,000,000 plus interest. Texaco made the payments and deducted the settlement amount on its federal income tax returns for those years as ordinary and necessary business expenses.

In February 2001, Texaco filed Refund Claims for the years 1988, 1990, 1991, and 1992, claiming that the tax benefit of the ordinary and necessary business expense deductions should have been calculated in accordance with 26 U.S.C. § 1341(a). The government denied the Refund Claims on the ground that § 1341(b)(2) rendered § 1341(a) inapplicable.

In January 2004, Texaco filed a complaint against the United States in the District Court for the Northern District of California. On cross-motions for summary judgment, the district court determined that subsection (b)(2) did not preclude Texaco from seeking tax treatment under § 1341(a), reasoning that the statute was ambiguous and sources outside the text of the statute supported Texaco's argument that § 1341(b)(2) only prohibited the use of § 1341(a) computation for "sales returns, allowances and similar items."

Following the entry of a final judgment, the Government filed a timely appeal.

## II.   The Statutory Scheme

The Supreme Court observed in 1931, that "[a]ll the revenue acts which have been enacted since the adoption of the Sixteenth Amendment have uniformly assessed the tax on the basis of annual returns showing the net result of all the taxpayer's transactions during a fixed accounting period, either the calendar year, or, at the option of the taxpayer, the particular fiscal year which he may adopt." *Burnet v. Sanford & Brooks Co.*, 282 U.S. 359, 363 (1931). Under the "claim of right doctrine," which follows from the annual accounting

principle, a taxpayer who has received an item of income over which he has full control must include that item in his income in the year of receipt, even if his right to retain that item is imperfect and he is later required to return part or all of that item. *See generally* 2 Mertens, *Law of Federal Income Taxation* §§ 12A:119-132 (1996 & Supp. July 2006).

Absent some statutory exception, such as § 1341(a), a taxpayer who was required in a later year to restore to a third party income previously received is entitled to a deduction if the repayment is deductible under some provision of the Internal Revenue Code. *See United States v. Lewis*, 340 U.S. 590, 591 (1951). In other words, a taxpayer may be able to reduce his taxes for the year of repayment by deducting the repayment amount from his taxable income, but he has no recourse against the increased taxes that he had paid in the year that he received the money. The taxpayer might benefit if the tax savings from the deduction in the year of repayment is greater than the increase in tax due to the inclusion of the amount in the year that the amount was received. However, if the deduction in the year of repayment results in a savings of less than the amount of increased tax paid as a result of the inclusion of the amount repaid in income for the year in which the amount was received, the taxpayer, absent some statutory provision, cannot recover the taxes he paid in the initial year on income that he subsequently restored to a third party.[2]

Section 1341(a) provides some taxpayers with an option.[3]

---

[2]It should be noted that the taxpayer's "loss" is somewhat ameliorated by the fact that the taxpayer has full use of the income between the time it is received and the time it is repaid to a third party.

[3]Section 1341(a) reads, in relevant part:

(a)  General rule.—If—

(1)  an item was included in gross income for a prior taxable year (or years) because it appeared that the taxpayer had an unrestricted right to such item;

If the taxpayer satisfies the criteria set forth in subsections (a)(1)-(3), as Texaco does, a taxpayer has a choice. It can still take a deduction for the repayment in the year of repayment. 26 U.S.C. § 1341(a)(5)(A). However, it can alternatively calculate what its tax would have been in the initial year without the income that was restored to a third party. If the difference between the tax it actually paid and the tax it would have paid if the restored amount had not been included in its gross income is greater than the deduction it would receive by claiming the deduction in the repayment year, it may use the difference instead of the deduction. 26 U.S.C. § 1341(a)(5)(B), *see Alcoa, Inc. v. United States*, 509 F.3d 173, 177 (3rd Cir. 2007) ("By allowing the taxpayer the choice between a simple deduction and a recalculation of the prior year's tax liability, section 1341 ensures that any change in tax rates or in the taxpayer's tax bracket is a tax neutral event with respect to the disputed item of income."). Here, the parties agree that if § 1341(a) is applicable, then for the four years in issue, Texaco, using the alternative provided by § 1341(a)(5)(B), is entitled to a refund of $101,043,085.

---

(2) a deduction is allowable for the taxable year because it was established after the close of such prior taxable year (or years) that the taxpayer did not have an unrestricted right to such item or to a portion of such item; and

(3) the amount of such deduction exceeds $3,000,

then the tax imposed by this chapter for the taxable year shall be the lesser of the following:

(4) the tax for the taxable year computed with such deduction; or

(5) an amount equal to—

(A) the tax for the taxable year computed without such deduction, minus

(B) the decrease in tax under this chapter (or the corresponding provisions of prior revenue laws) for the prior taxable year (or years) which would result solely from the exclusion of such item (or portion thereof) from gross income for such prior taxable year (or years).

The government, however, contends that Texaco is barred from using § 1341(a) by § 1341(b)(2).[4] The government's position is that § 1341(a) is not applicable to Texaco because the first sentence of § 1341(b)(2) provides that "Subsection (a) does not apply to any deduction allowable with respect to an item which was included in gross income by reason of the sale or other disposition of stock in trade of the taxpayer." Texaco concedes that "[d]uring the years 1973 through 1981, all of Texaco's sales of crude oil and petroleum products were sales of inventory or property held by Texaco primarily for sale to customers in the ordinary course of Texaco's trade or business." Because the income in issue arose out of the sale of inventory, the government asserts that Texaco is barred from using § 1341(a) to compute its taxes. Texaco disagrees, contending that §1341(b)(2) does not bar it from using § 1341(a). Thus, this litigation turns on the meaning and scope of § 1341(b)(2).[5]

---

[4]This subsection reads:

Subsection (a) does not apply to any deduction allowable with respect to an item which was included in gross income by reason of the sale or other disposition of stock in trade of the taxpayer (or other property of a kind which would properly have been included in the inventory of the taxpayer if on hand at the close of the prior taxable year) or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business. This paragraph shall not apply if the deduction arises out of refunds or repayments with respect to rates made by a regulated public utility (as defined in section 7701(a)(33) without regard to the limitation contained in the last two sentences thereof) if such refunds or repayments are required to be made by the Government, political subdivision, agency, or instrumentality referred to in such section, or by an order of a court, or are made in settlement of litigation or under threat or imminence of litigation.

[5]The interpretation of a statute such as 26 U.S.C. § 1341 is a question of law, and accordingly, we review de novo the district court's determination. *See Estate of Heim v. Comm'r of Internal Revenue*, 914 F.2d 1322, 1325 (9th Cir. 1990).

### III.   Interpreting Section 1341(b)(2)

The Supreme Court has directed that the first step in interpreting a statute "is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997). "The inquiry ceases if the statutory language is unambiguous and the statutory scheme is coherent and consistent." *Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 450 (2002) (internal citation omitted). The Supreme Court has further noted that "[i]f a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect." *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843 n.9 (1984).

**[1]** The language of 26 U.S.C. § 1341(b)(2) is clear. The statute provides that a "deduction" otherwise "allowable" under subsection (a) is prohibited if the deduction was based on "an item" included in gross income "by reason of" the sale of inventory. Thus, the statute directs us to the basis of the deduction allowable under subsection (a). The deduction arises if a taxpayer included in its tax return income that it subsequently had to pay to a third party. Subsection (b)(2) asks what was the basis for the item included in gross income that year. If the item was included in gross income because of the sale of stock in trade (inventory), then the taxpayer is prohibited by subsection (b)(2) from using the deduction otherwise allowed by subsection (a).

**[2]** The Federal Circuit agrees that this is the plain meaning of subsection (b)(2). In analyzing the statute, the Federal Circuit parsed § 1341 into three phrases: "[A] any deduction allowable [B] with respect to an item which was included in gross income [C] because of the sale or other disposition of . . . property such as inventory. *Pennzoil-Quaker State Co. v. United States*, 511 F.3d 1365, 1372 (Fed. Cir. 2008). It then wrote:

The wording of the inventory exception is clear as a grammatical matter. A modifying phrase attaches to its closest referent; so phrase [C] ("because of the sale . . . of . . . inventory") would ordinarily modify phrase [B] ("which was included in gross income"). Accordingly, if the "item was included in gross income for a prior taxable year" because of the sale of inventory, then the inventory exception precludes section 1341 relief. 26 U.S.C. § 1341(a)(1).

*Id.* at 1373 (Fed. Cir. 2008) (alteration in original).

Texaco, however, urges that there is a "syntactical" ambiguity in subsection (b)(2), and that the phrase "by reason of the sale or other disposition of [inventory]" modifies the phrase "deduction allowable with respect to an item which was included in gross income" in such a way that "the question that must be answered is whether *the deduction in the current year* is allowable 'by reason of the sale or other disposition of [inventory].' " It then defines "by reason of the sale or other disposition of [inventory]" to be limited to "sales returns, allowances, and similar items."

Even if such a construction were grammatically possible, it would not be reasonable. First, subsection (a) clearly states that its general rule applies when "an item was included in gross income *for a prior taxable year* (or years) because it appeared that the taxpayer had an unrestricted right to such item." 26 U.S.C. § 1341(a)(1) (emphasis added). Accordingly, there is no reason to interpret "included in gross income" in subsection (b)(2) as referring to anything other than the prior taxable year or years. Moreover, the proposed interpretation would eviscerate subsection (b)(2) because a subsection (a) deduction is always based on calculations arising from a prior tax year and not on whether an item was included in gross income in the current year.

Second, there is nothing in the statute that limits the definition of "sale or other disposition of stock in trade" to "sales returns, allowances, and similar items." Texaco urges that such a limitation arises from Treasury Regulation § 1.1341-1(f).[6] We, however, agree with the Federal Circuit that this regulation does not limit subsection (b). The Federal Circuit explained:

> The Treasury Regulation, which recites the inventory exception and infers "therefore" that § 1341 provides no relief for transactions in inventory, is not to the contrary. The word "therefore" means "as a consequence [or] it must follow." Bryan A. Garner, *The Elements of Legal Style* 141 (1991). The Treasury Regulation can be made to say no more than that "sales returns and allowances and similar items" are examples of situations where the inventory exception applies; they do not delimit the exception. *Mertens,* a leading tax treatise, explains that the inventory exception "is not limited to sales returns, but [rather] the Regulations use this merely to provide an example of the inventory exception. For example, amounts for which the taxpayer is liable due to a patent infringement fall within this excep-

---

[6]Treasury Regulation § 1.1341-1(f) is entitled "Inventory items, stock in trade, and property held primarily for sale in the ordinary course of trade or business." Subsection (1) reads:

> Except for amounts specified in subparagraphs (2) and (3) of this paragraph, the provisions of section 1341 and this section do not apply to deductions attributable to items which were included in gross income by reason of the sale or other disposition of stock in trade of the taxpayer (or other property of a kind which would properly have been included in the inventory of the taxpayer if on hand at the close of the prior taxable year) or property held by the taxpayer primarily for sale to customers in the ordinary course of the taxpayer's trade or business. This section is, therefore, not applicable to sales returns, allowances, and similar items.

tion if the infringement is related to the inventory goods." *Mertens Law of Federal Income Taxation* § 12A:130 (2007).

*Pennzoil-Quaker*, 511 F.3d at 1373.

Third, Texaco's proposed interpretation of subsection (b) would reduce the final sentence of the section to surplusage. The Supreme Court counsels against adopting such a statutory interpretation, stating:

> It is "a cardinal principle of statutory construction" that "a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *Duncan v. Walker,* 533 U.S. 167, 174, . . . (2001) (internal quotation marks omitted); *see United States v. Menasche,* 348 U.S. 528, 538-539, . . . (1955) ("It is our duty 'to give effect, if possible, to every clause and word of a statute.' " (quoting *Montclair v. Ramsdell,* 107 U.S. 147, 152, . . . (1883))). "[W]ere we to adopt [Andrews'] construction of the statute," the express exception would be rendered "insignificant, if not wholly superfluous." *Duncan,* 533 U.S. at 174, . . . We are "reluctant to treat statutory terms as surplusage in any setting," *ibid.* (internal alteration and quotation marks omitted), and we decline to do so here.

*TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001).

The final sentence of subsection (b)(2) provides that the bar to using a subsection (a) computation in the first sentence does not apply "if the deduction arises out of refunds or repayments made by a regulated public utility," if required by a government agency, a court, or "made in settlement of litigation or under threat or imminence of litigation." Although it may not be impossible for a public utility's refund or repay-

ment to be based on "sales returns, allowances, and similar items," it defies logic to believe that Congress in enacting the final sentence of subsection (b)(2) was concerned with only such a refund or repayment. Again, we agree with the Federal Circuit when it reasons:

> A "sales return" is defined as "merchandise given back to the seller because of defects," while a "sales allowance" is defined as a "reduction in the selling price of goods because of a particular problem (*e.g.,* breakage, quality deficiency, incorrect quantity)." *Dictionary of Accounting Terms* 387, 386 (3d ed. 2000). A public utility's government- or court-ordered rate refund is neither of those things. Quaker's narrow interpretation of the inventory exception would therefore render the public utility exception to the inventory exception superfluous-an impermissible reading.

*Pennzoil-Quaker*, 511 F.3d at 1374.

[3] For the forgoing reasons we conclude that subsection (b)(2) clearly provides that the deduction allowed by subsection (a) is not available with respect to an item which was included in the gross income in a prior taxable year by reason of the sale or other disposition of stock in trade or inventory.

In light of our conclusion that subsection (b)(2) is plain and unambiguous, several of Texaco's other arguments need not detain us. Texaco argues that Congress's intent in enacting § 1341 may be extracted from the legislative histories of § 1341 and former Internal Revenue Code § 462. Internal Revenue Code of 1954, § 462(a), 68A Stat. 158-159 (repealed by Act of June 15, 1955, ch. 143, §§ 1, 3, 69 Stat. 134, 135). Despite the facts that the statutes covered different taxpayers, that § 1341 makes no mention of § 462, and that § 462 was retroactively repealed in 1955, Texaco argues that the "Committee Reports confirm Congress's unmistakable intention

that the exception in section 1341(b)(2) apply only to those deductions that qualified for section 462 treatment." Whatever the merits of Texaco's argument, it is insufficient to overcome the plain meaning of the statute's language. *See BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004) (stating that the "preeminent canon of statutory interpretation requires us to presume that [the] legislature says in a statute what it means and means in a statute what it says there" and that "our inquiry begins with the statutory text, and ends there as well if the text is unambiguous") (internal quotation marks and citations omitted).

Similarly, we are not free to act on Texaco's assertion that subsection (b) creates an inequity. Once Congress has spoken, the court cannot revise a statute to promote a more equitable consequence. *See Badaracco v. Comm'r of Internal Revenue*, 464 U.S. 386, 398 (1984) ("The relevant question is not whether, as an abstract matter, the rule advocated by petitioners accords with good policy. The question we must consider is whether the policy petitioners favor is that which Congress effectuated by its enactment of [the statute]. Courts are not authorized to rewrite a statute because they might deem its effects susceptible of improvement."); *In re Kelly*, 841 F.2d 908, 913 (9th Cir. 1988) (stating that "policy arguments are, of course, beside the point once Congress has spoken.")

IV.   Deference to the agency's position

Even if there were some ambiguity in § 1341(b), we would be hard pressed not to defer to the agency's interpretation of the statute. In *Morales v. Sociedad Espanola de Auxilio Mutuo y Beneficencia*, 524 F.3d 54 (1st Cir. 2008), the First Circuit recently reiterated the controlling standard as follows:

> If, however, the language admits of a possible ambiguity and Congress has not spoken directly to the issue, the court must look for guidance to any relevant regulations promulgated by an agency

charged with administering the statute. *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 843 . . . (1984); *Muñiz v. Sabol*, 517 F.3d 29, 38 (1st Cir. 2008).

In those circumstances, a court is bound to apply the agency's interpretation of the statute, as embodied in a regulation, as long as it constitutes a permissible construction of the statutory text. *Chevron,* 467 U.S. at 843 . . . . Determining a regulation's meaning requires application of the same principles that imbue exercises in statutory construction. *See, e.g., Cumberland Coal Res., LP v. Fed. Mine Safety & Health Rev. Comm'n,* 515 F.3d 247, 254 (3d Cir. 2008); *Sidell v. Comm'r,* 225 F.3d 103, 110 (1st Cir. 2000).

When the regulatory language remains ambiguous even after the application of those principles, an inquiring court must look beyond the letter of the regulation and defer to an agency's reasonable interpretation of the regulation. *United States v. Lachman,* 387 F.3d 42, 54 (1st Cir. 2004); *see Christensen v. Harris County,* 529 U.S. 576, 588 . . . (2000).

*Id*. at 57.

**[4]** Although Texaco derides Revenue Ruling 2004-17, 2004-1 C.B. 516, as an unreasoned afterthought and no more than a belated attempt to reconcile the agency's position with Treasury Regulation § 1.1341-1(f),[7] we note that Ruling 2004-17 does include the statement: "Section 1341(b)(2) provides that § 1341(a) does not apply to any deduction allowable with respect to an item included in gross income by reason of the

---

[7]We have already rejected Texaco's reading of Treasury Regulation § 1.1341-1(f), *see supra.*

sale or other disposition of the taxpayer's stock in trade (or other property of a kind that would have been included in the taxpayer's inventory if on hand at the close of the prior taxable year) or property held by the taxpayer primarily for sale to customers in the ordinary course of its trade or business." In other words, the Ruling includes the agency's interpretation of the statute that it was entrusted by Congress to enforce, and its interpretation of its own regulation.

Texaco notes that Revenue Ruling 2004-17 issued on February 6, 2004, shortly after Texaco filed its complaint. Citing *Reynolds Metals Co. v. United States*, 389 F. Supp. 2d 692, 703-04 (E.D. Va. 2005), Texaco argues that a Revenue Ruling issued during the pendency of litigation has no power to persuade. This perspective, however, has yet to gain broad acceptance. *See Alcoa*, 509 F.3d at 183 n.9 ("Because we reach this result without relying on Revenue Ruling 2004-17, which the IRS issued while the *Reynolds* litigation was ongoing and which addresses the precise issue presented both in *Reynolds* and here, we do not decide what deference it should be accorded."). We recognize that the timing of a Revenue Ruling may be relevant to its power to persuade, but we do not think that the timing of Revenue Ruling 2004-17 precludes us from considering the ruling, particularly as the ruling was not based on the facts in Texaco's case.

We have held that generally revenue rulings are entitled at least to "*Skidmore* deference." *Omohundro v. United States*, 300 F.3d 1065, 1067-1069 (9th Cir. 2002); *but see Tualatin Valley Builders Supply, Inc. v. United States*, 522 F.3d 937, 948 (9th Cir. 2008) (Judge O'Scannlain specially concurring, opining that a revenue procedure was entitled to *Chevron* rather than *Skidmore* deference).[8] The Supreme Court in *Skid-*

---

[8]The government also asserts that Revenue Ruling 2004-17 is entitled to *Chevron* deference, not just *Skidmore* deference. Texaco strongly disagrees. Because resolution of this question is not necessary to our disposition of this appeal, we decline to address it.

*more v. Swift Co.*, 323 U.S. 134, 140 (1944), explained that agency rulings "while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance."

**[5]** Here, Revenue Ruling 2004-17, along with the agency's constant position in this litigation as well as in the *Pennzoil-Quaker* litigation, reflect that the agency has consistently interpreted subsection (b)(2) as prohibiting the application of subsection (a) with respect to an item which was included in the gross income in a prior taxable year by reason of the sale of inventory. We have determined that this is the plain meaning of subsection (b)(2). It follows that even if such a reading were not compelled, the agency's adoption of such a reading would be a reasonable interpretation of the statute and thus entitled to deference. *Chevron*, 467 U.S. at 844 (noting that even when the legislative delegation to an agency on a particular question is implicit rather than explicit, "a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency").

## V.    Conclusion

**[6]** Although 26 U.S.C. § 1341(a) was designed to allow certain taxpayers relief from having paid taxes on income it subsequently is required to pay to a third party, *see Alcoa*, 509 F.3d at 177, subsection (b)(2) restricts the availability of a § 1341(a) computation. We read § 1341(b)(2) as plainly prohibiting the use of a § 1341(a) computation by an entity other than a public utility with respect to any amount which was included in its gross income in a prior taxable year by reason of the sale or other disposition of stock in trade or inventory. Our reading of the statute is compelled by its plain language, its logic, its lack of any limitation on the definition of inventory, and the presence of the final sentence of subsection (b)(2). Accordingly, the district court's grant of summary

judgment in favor of Texaco is **VACATED** and the case is **REMANDED** to the district court for the entry of judgment in favor of the government.[9]

---

[9]We note that the district court when ruling on the cross-motions for summary judgment did not have the benefit of the Federal Circuit's opinion in *Pennzoil-Quaker*, 511 F.3d 1365, or the government's explicit argument concerning the second sentence in § 1341(b).