**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

GOLDEN WEST REFINING COMPANY,
a California corporation,
               *Plaintiff-Appellee,*

               v.

SUNTRUST BANK, a Georgia State
chartered bank,
               *Defendant-Appellant.*

No. 06-56006

D.C. No.
CV-05-01550-FMC

OPINION

Appeal from the United States District Court
for the Central District of California
Florence-Marie Cooper, District Judge, Presiding

Argued and Submitted
March 7, 2008—Pasadena, California

Filed August 18, 2008

Before: J. Clifford Wallace, Ronald M. Gould, and
Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Gould

10919

## COUNSEL

Susan A. Mitchell, Frederick A. Clark, McKenna Long & Aldridge LLP, Los Angeles, California, for the defendant-appellant.

Dennis B. Arnold, Marjorie E. Lewis, and Sarah F. Powers, Gibson, Dunn & Crutcher LLP, Los Angeles, California, for the plaintiff-appellee.

## OPINION

GOULD, Circuit Judge:

SunTrust Bank ("SunTrust") appeals the district court's judgment in favor of Golden West Refining Company ("Golden West") in an action brought by Golden West to draw on a letter of credit issued to it by SunTrust's predecessor Crestar Bank ("Crestar"). SunTrust argues that the district court erred (1) by holding that the letter of credit was not "perpetual" under Uniform Commercial Code ("UCC") § 5-106(d) and thereby had not automatically expired before Golden West made a draw against it, (2) by rejecting SunTrust's waiver argument, and (3) by concluding that Golden West's specific performance and breach of contract claims were not precluded by the exclusive remedies available under Article 5 of the UCC. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

## I

In 1998, CENCO, Inc. ("CENCO") acquired, among other assets, two leases from Golden West that resulted in the execution of a May 11, 1998 Letter Agreement ("the Letter Agreement"). CENCO is a corporation wholly owned by a trust ("UniTrust") of which Pat Robertson is the trustee. The

Letter Agreement obligated CENCO to defend, indemnify, and hold Golden West harmless against any claims arising from the liabilities imposed on Golden West as tenant under the leases. To secure performance by CENCO of these duties, the Letter Agreement required CENCO to obtain a $5 million irrevocable letter of credit. The Letter Agreement required Golden West to terminate the letter of credit upon satisfaction of the conditions relating to the leases.

In May 1998, UniTrust requested that Crestar, the predecessor of SunTrust, issue a $5 million letter of credit on CENCO's account. On May 21, 1998, Crestar issued the irrevocable letter of credit. It stated, in pertinent part:

> THIS LETTER OF CREDIT SHALL EXPIRE ONE YEAR FROM THE DATE HEREOF PROVIDED HOWEVER, THAT IT SHALL BE DEEMED AUTOMATICALLY RENEWED WITHOUT AMENDMENT FOR ADDITIONAL ONE YEAR PERIODS FROM THE PRESENT OR ANY FUTURE EXPIRATION DATE HEREOF, UNLESS AT LEAST 30 DAYS PRIOR TO ANY SUCH DATE(S), GOLDEN WEST REFINING COMPANY SHALL HAVE SENT CRESTAR BANK NOTICE BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED, OR OVERNIGHT COURIER SERVICE, THAT GOLDEN WEST REFINING COMPANY ELECTS NOT TO REQUIRE THIS LETTER OF CREDIT RENEWED FOR ANY SUCH ADDITIONAL PERIOD.

The letter of credit also contained an express provision for termination that required the consent of both Golden West and CENCO:

> THE AMOUNT OF THIS LETTER OF CREDIT SHALL BE REDUCED OR TERMINATED ON RECEIPT BY CRESTAR BANK OF A NOTA-

RIZED WRITTEN AGREEMENT SIGNED BY A VICE PRESIDENT OF GOLDEN WEST REFINING COMPANY AND A VICE PRESIDENT OF CENCO AUTHORIZING SUCH REDUCTION OR TERMINATION.

UniTrust signed a Negative Pledge Agreement under which it agreed to maintain liquid assets in a specified amount, free of encumbrances, while the letter of credit was in effect. Crestar believed, based on representations by Pat Robertson, that the letter of credit would only be outstanding for ninety days.

In Spring 2001, SunTrust advised Robertson that it would not renew the letter of credit unless Robertson secured it. Suzanne Franklin, an employee of SunTrust responsible for cultivating the bank's relationship with Robertson and UniTrust, testified by deposition that she received a call from CENCO's in-house counsel stating that UniTrust was thinking about suing Golden West. On April 2, 2001, CENCO filed an action against Golden West in the Superior Court of the State of California for the County of Los Angeles, alleging that Golden West had improperly failed to terminate the letter of credit. In May 2001, SunTrust told Robertson that UniTrust must either provide collateral to secure the letter of credit or transfer it to another bank. After being informed by Robertson that there soon would be an order from the Superior Court requiring Golden West to consent to cancellation, SunTrust agreed to give UniTrust an additional ninety days to deliver collateral to secure the letter of credit. During the state court action, CENCO forwarded to SunTrust copies of status reports drafted by CENCO's counsel, one of which recited that Golden West claimed that it had not been properly served in the state court action. On June 4, 2001, the Superior Court entered Golden West's default for failure to answer CENCO's complaint.

On July 12, 2001, the Superior Court ordered that Golden West by default consented to the termination of the letter of

credit on its behalf by SunTrust and held that the letter of credit was released. On July 13, 2001, Robertson by facsimile sent SunTrust a copy of the default judgment, with a letter requesting immediate termination of the credit. That same day, SunTrust's in-house counsel telephoned CENCO's counsel to determine whether there was any waiting period before a default judgment became effective. SunTrust's in-house counsel knew that SunTrust was not a party to the action in the Superior Court, and did not believe that the Superior Court had jurisdiction over SunTrust. SunTrust's in-house counsel did not know and did not inquire whether Golden West had notice of the default judgment before advising that SunTrust cancel the letter of credit. At Robertson's request, SunTrust then terminated the credit. On July 14, 2001, Franklin advised Robertson that SunTrust had cancelled the letter of credit effective July 12, 2001.

On July 20, 2001, the Superior Court by order vacated the default judgment. On October 2, 2001, the Superior Court entered another order, providing:

> (1) The Letter of Credit shall be, and hereby is, reinstated as it exited [sic] on July 12, 2001, immediately prior to entry of the subsequently vacated default judgment herein; and

> (2) Plaintiffs [CENCO]: (a) shall take all actions and do all things reasonably necessary or appropriate to effectuate the provisions of paragraph 1 above; (b) shall fully cooperate, as reasonably requested by Golden West, with Golden West's efforts to effectuate the provisions of paragraph 1 above; and (c) shall not interfere with any efforts by Golden West to effectuate the provisions of paragraph 1 above.

Despite CENCO's request that SunTrust reinstate the credit, SunTrust did not reinstate the letter of credit because neither CENCO nor UniTrust offered SunTrust adequate col-

lateral. UniTrust refused to reinstate the Negative Pledge, or to provide any other security, taking the position that the letter of credit had terminated properly on July 12, 2001.

During 2004 and 2005, the lessor of the properties leased by Golden West demanded that Golden West comply with the terms of its lease, an obligation for which CENCO had agreed to indemnify Golden West under the Letter Agreement. On January 12, 2005, Golden West demanded that CENCO deliver to the lessor the requisite funds. After CENCO failed to do so, on February 2, 2005, Golden West made a draw on the letter of credit for $1,020,000. SunTrust dishonored the letter of credit on February 8, 2005, on the grounds that it had been cancelled pursuant to the default judgment and that it was "perpetual" and therefore had expired under UCC § 5-106(d). SunTrust's dishonoring of the letter of credit, rejecting Golden West's draw, precipitated this dispute.

Golden West brought this action in the federal district court, asserting diversity jurisdiction. It claimed in its amended complaint wrongful dishonor of the letter of credit and breach of contract, and requested specific performance and declaratory relief. On May 22, 2006, the district court gave summary judgment to Golden West and denied SunTrust's motion for summary judgment. The district court concluded that, under UCC § 5-106(d), the letter of credit was not perpetual and therefore had not expired and was still in effect on the date of the draw. The district court also held that the Superior Court's default judgment was ineffective because Golden West had not consented to cancellation of the letter of credit as required in the Letter Agreement. The district court also held that Golden West had not waived its right to compel CENCO to follow the Superior Court orders reinstating the letter of credit because the default judgment had not given SunTrust license to terminate the letter of credit. In a judgment entered July 6, 2006, the district court awarded Golden West damages, including consequential damages, for its

wrongful dishonor, breach of contract, and specific performance claims. SunTrust appealed.

## II

We review de novo a district court's summary judgment. *See, e.g.*, *Universal Health Servs. Inc. v. Thompson*, 363 F.3d 1013, 1019 (9th Cir. 2004). On review, we view the evidence in the light most favorable to the nonmoving party and determine whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *See Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir. 2004).

We also review de novo a district court's interpretation of state law. *Edmonds v. Hammett*, 450 F.3d 917, 925 n.8 (9th Cir. 2006). When interpreting state law, we must follow the decisions of the state's highest court, but when the state supreme court has not spoken on an issue, we are "not precluded from affording relief" and "must determine what result the [state supreme] court would reach based on state appellate court opinions, statutes and treatises." *See Hewitt v. Joyner*, 940 F.2d 1561, 1565 (9th Cir. 1991) (internal quotation marks and citation omitted).

## III

SunTrust argues that the letter of credit it issued to Golden West on May 21, 1998 was a perpetual letter under Article 5 of the UCC[1] and therefore expired five years after it was issued and about two years before Golden West made a draw on the letter of credit on February 2, 2005. The district court

---

[1]The letter of credit at issue here is subject to the Uniform Customs and Practice for Documentary Credits ("UCP"). The UCP, however, contains no provision regarding "perpetual" letters of credit. Both parties agree that in light of the silence of the UCP, the UCC applies to determine the validity of the letter of credit.

concluded that the letter of credit was not perpetual because so long as a letter of credit "articulates an expiration date, albeit one that renews automatically and terminates only upon notice by the beneficiary, the Letter of Credit cannot be said to be perpetual." We agree with the district court and hold that the plain language of UCC § 5-106(d) requires that a letter of credit state that it is perpetual to qualify as a perpetual letter of credit.

[1] Section 5-106 of the UCC[2] prescribes rules regarding letters of credit:

> (a)  A letter of credit is issued and becomes enforceable according to its terms against the issuer when the issuer sends or otherwise transmits it to the person requested to advise or to the beneficiary. A letter of credit is revocable only if it so provides.

> (b)    After a letter of credit is issued, rights and obligations of a beneficiary, applicant, confirmer, and issuer are not affected by an amendment or cancellation to which that person has not consented except to the extent the letter of credit provides that it is revocable or that the issuer may amend or cancel the letter of credit without that consent.

> (c)    If there is no stated expiration date or other provision that determines its duration, a letter of credit expires one year after its stated date of issuance or, if none is stated, after the date on which it is issued.

---

[2]Crestar issued the letter of credit in Virginia and delivered it to Golden West in California. Both California and Virginia have adopted the UCC, including all provisions of Article 5 relevant to this appeal, in their respective state codes. We therefore refer to the UCC generally, as opposed to a specific section of Virginia or California code. Because there is no material difference in Virginia and California case law interpreting the UCC as codified, we cite both California and Virginia case law to support our decision.

> (d)   *A letter of credit that states that it is perpetual*
> expires five years after its stated date of issuance, or
> if none is stated, after the date on which it is issued.

UCC § 5-106 (emphasis added). We must give effect to the language of a statute if it is plain and unambiguous. *See Texaco Inc. v. United States*, 528 F.3d 703, 707 (9th Cir. 2008) (" 'The [interpretive] inquiry ceases if the statutory language is unambiguous and the statutory scheme is coherent and consistent.' " (quoting *Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 450 (2002))); *Catholic Mut. Relief Soc'y v. Superior Court*, 42 Cal. 4th 358, 369 (2007) ("If the language of a statute is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature." (internal quotation marks, alteration, and citation omitted)); *Marsh v. City of Richmond*, 234 Va. 4, 11 (1987) ("[I]f statutory language is not ambiguous but has a usual and plain meaning, rules of construction do not apply and resort to legislative history is both unnecessary and improper. Instead, we determine legislative intent from the plain meaning of the words used."). The plain meaning of "to state" is "to express in words." *See* MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2005). Applying this definition to UCC § 5-106(d), a letter of credit is only perpetual if it expresses in words that it is perpetual. This, as Golden West concedes, means that a letter of credit can be perpetual without using the exact word "perpetual," and instead using synonyms that clearly declare that the letter of credit will remain outstanding in perpetuity, but it is essential that the words of the letter of credit definitively provide it will continue in perpetuity.

**[2]** Here, we see no ambiguity. Under the plain meaning of the word "states," SunTrust's letter of credit is not perpetual. SunTrust's letter of credit "states" to the contrary that it "shall expire one year from the date hereof provided however, that it shall be deemed automatically renewed without amendment for additional one year periods . . . unless . . . Golden West

. . . elects not to require this letter of credit renewed." Thus, the letter of credit recites that it will expire,[3] that it will not continue perpetually, either when Golden West elects not to renew or when SunTrust receives a written agreement by both Golden West and CENCO authorizing the termination. Although the matter is not entirely free from doubt because of the automatic renewal provision, we conclude that under the plain language of § 5-106(d), the letter of credit is not perpetual. To interpret the law governing letters of credit in such a nonliteral way as is urged by SunTrust would introduce grave uncertainties into the use of letters of credit and impair their utility for domestic or foreign commerce.

SunTrust argues that this approach to the UCC is at odds with the intentions of the drafters of Article 5 and the primary purpose of letter of credit law—namely, to limit letters of credit of unlimited duration. As such, SunTrust urges us to adopt a functional and broad definition of "states that it is perpetual." But, if the word "states" in UCC § 5-106(d) is interpreted, as SunTrust advocates, so that letters of credit like that at issue here are perpetual, portions of other sub-sections of UCC § 5-106 will be rendered superfluous, in contravention of the rules of statutory interpretation. *See Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 681 (9th Cir. 2005) ("We try to avoid, where possible, an interpretation of a statute that renders any part of it superfluous and does not give effect to all of the words used by [the legislature]." (internal quotation marks and citation omitted)); *Big Creek Lumber Co. v. County of Santa Cruz*, 38 Cal. 4th 1139, 1155 (2006) (" 'Courts should give meaning to every word of a statute if possible, and should avoid a construction making any word surplusage.' " (alteration omitted) (quoting *Arnett v. Dal Cielo*, 14 Cal. 4th 4, 22 (1996))); *Cook v. Commonwealth*, 268 Va. 111, 114 (2004) ("Words in a statute should be interpreted, if possible, to avoid rendering words superfluous.").

---

[3]SunTrust does not dispute that the letter of credit in this case states an expiration date, and thus is not governed by UCC § 5-106(c).

Under UCC § 5-106(c), a letter of credit expires one year after issuance if there is either no stated expiration date or no other provision that determines its duration. UCC § 5-106(c). This sub-section thereby contemplates two methods to avoid expiration of a letter of credit one year after issuance: the letter of credit could (1) "state" an expiration date; or (2) include another provision that determines its duration. *Id.* In other words, subsection (c) is the default provision if a letter of credit has no termination date or other measure of its duration; subsection (d) is the default provision if a letter of credit states that it is perpetual. If the interpretation of UCC § 5-106(d) advocated by SunTrust is applied to UCC § 5-106(c), then the second method to avoid expiration of a letter of credit one year after its issuance—namely, including in the letter of credit a provision that determines its duration—would be superfluous. Our interpretation of § 5-106(d), on the other hand, gives effect to the second prong of § 5-106(c).

[3] Finally, SunTrust asks us to interpret the Official Comments accompanying UCC § 5-106 to conclude that Sun-Trust's letter of credit is perpetual. Official Comment 4 states, in pertinent part, "A letter of credit that may be revoked or terminated at the discretion of the issuer by notice to the beneficiary is not 'perpetual.' " UCC § 5-106, Official Comment 4. SunTrust suggests that by explaining that letters of credit that provide for revocation or termination at the discretion of the issuer are not perpetual, the Official Comment implies that letters of credit that provide for revocation or termination only at the discretion of the beneficiary *are* perpetual, and therefore fall within the limitations of UCC § 5-106(d). We reject this argument. The absence of an official comment addressing renewal clauses controlled by the beneficiary does not make such letters of credit perpetual. As Golden West notes, the drafters of Article 5 of the UCC could have included Official Comment 4 specifically to protect a particular type of letter of credit—evergreen credits[4] —and not to indicate that all other

---

[4]An evergreen letter of credit "is effective for a designated period, usually one year, and will be renewed automatically for an additional period,

letters of credit that contain renewal clauses terminated at the discretion of the beneficiary are perpetual. We will not speculate what the drafters intended by electing not to comment on a particular type of letter of credit. *See, e.g.*, *Texaco*, 528 F.3d at 707. We conclude that the language of the statute supports the district court's interpretation of UCC § 5-106(d). We hold that under UCC § 5-106(d), the letter of credit in this case was not perpetual and therefore did not expire five years after its stated date of issuance.

## IV

Both Golden West and SunTrust presented waiver claims before the district court, and both challenge the district court's waiver decisions. We affirm the district court's rejection of both waiver claims.

## A

SunTrust raised as an affirmative defense that Golden West waived any right to enforce the letter of credit. Golden West argued that SunTrust waived this affirmative defense by not asserting it in the notice of dishonor as Golden West alleges is required under UCC § 5-108. The district court determined that SunTrust did not waive its affirmative defense of waiver. Golden West challenges the district court's determination.

**[4]** Section 5-108 states, in pertinent part:

> (a)    Except as otherwise provided in Section 5-109, an issuer shall honor a presentation that, as determined by the standard practice referred to in subsection (e), appears on its face strictly to comply with

unless the issuer gives notice of its decision not to renew prior to an expiry." 1 JOHN F. DOLAN, THE LAW OF LETTERS OF CREDIT, ¶ 5.03[3][b] n.232 (4th ed. 2007).

the terms and conditions of the letter of credit. Except as otherwise provided in Section 5-113 and unless otherwise agreed with the applicant, an issuer shall dishonor a presentation that does not appear so to comply.

(b)   An issuer has a reasonable time after presentation, but not beyond the end of the seventh business day of the issuer after the day of its receipt of documents: (1) to honor, (2) if the letter of credit provides for honor to be completed more than seven business days after presentation, to accept a draft or incur a deferred obligation, or (3) to give notice to the presenter of discrepancies in the presentation.

(c)   Except as otherwise provided in subsection (d), an issuer is precluded from asserting as a basis for dishonor any discrepancy if timely notice is not given, or any discrepancy not stated in the notice if timely notice is given.

(d)   Failure to give the notice specified in subsection (b) or to mention fraud, forgery, or expiration in the notice does not preclude the issuer from asserting as a basis for dishonor fraud or forgery as described in Section 5-109(a) or expiration of the letter of credit before presentation.

UCC § 5-108. Relying on sub-section (c), Golden West argues that because SunTrust did not give timely notice of the "discrepancy" that Golden West had waived its right to draw on the letter of credit in SunTrust's notice of dishonor, Sun-Trust is precluded now from asserting waiver as a defense to dishonor. Golden West notes that "waiver" is not listed in sub-section (d), which lists types of claims that may be asserted after the initial notice of dishonor. Therefore, Golden West contends that waiver must be asserted in the initial notice of dishonor or else it is waived under sub-section (c).

The district court rejected this claim, concluding that the "discrepancy" referred to in UCC § 5-108(c) relates not to a general problem with the attempted draw on the letter of credit, but only to an asserted discrepancy in the presentation of documents necessary for a draw on the letter of credit. The district court determined, therefore, that UCC § 5-108(c) did not apply to SunTrust's claim that Golden West waived its right to enforce the letter of credit.

**[5]** Here, unlike the "states that it is perpetual" language of UCC § 5-106(d), the meaning of the word "discrepancy" in UCC § 5-108 is not clear when viewing sub-section (c) in isolation. We therefore must consider the entirety of UCC § 5-108 to determine the meaning of "discrepancy." *See People v. Allen*, 42 Cal. 4th 91, 102 (2007) (quoting *Pulcifer v. County of Alameda*, 29 Cal. 2d 258, 262 (1946)) (" 'In the absence of express language, the intent [of the Legislature] must be gathered from the terms of the statute construed as a whole, from the nature and character of the act to be done, and from the consequences which would follow the doing or failure to do the particular act at the required time.' "); *see also Va. Elec. & Power Co. v. Bd. of County Supervisors*, 226 Va. 382, 387-88 (1983) ("[I]t is our duty to interpret the several parts of a statute as a consistent and harmonious whole so as to effectuate the legislative goal.").

**[6]** Looking to other sub-sections of UCC § 5-108 for guidance, the district court observed that sub-section (b) uses the language "to give notice to the presenter of *discrepancies in the presentation*." UCC § 5-108(b)(3) (emphasis added). Sub-section (b) describes the three courses of action an issuer must take within seven days of a draw on the letter of credit, and sub-section (c) defines the consequences of taking or failing to take those actions. Because under sub-section (b) the only discrepancies an issuer is required to state in the notice of dishonor are "discrepancies in the presentation," we hold that those are the only discrepancies that are waived under sub-section (c) if not included in the notice of dishonor.

**[7]** This construction of the statute also explains the inclusion of fraud, forgery, and expiration, and the absence of waiver, in sub-section (d). *See* UCC § 5-106(d). Fraud, forgery and expiration are all discrepancies in the presentation— they are challenges to the actual presentation—whereas the waiver claim here is an equitable challenge, separate from the presentation submitted by the beneficiary, regarding the right of the beneficiary to attempt a draw on the letter of credit after three years of inaction following the Superior Court's order reinstating the letter of credit. The Official Comments of UCC § 5-108 support this distinction. Official Comment 3 classifies expiration as a "discrepancy of tardy presentation." UCC § 5-108, Official Comment 3. Therefore, the listing in sub-section (d) of expiration as a defense that need not be asserted in the notice of dishonor does not require construing "discrepancy" in sub-section (c) more broadly than discrepancies in the presentation. Accordingly, we reject Golden West's argument that the district court's interpretation of "discrepancy" in sub-section (c) is inconsistent with sub-section (d).

**B**

Because SunTrust did not waive its claim that Golden West waived its right to enforce the letter of credit, we next address SunTrust's waiver claim. SunTrust alleges that Golden West waived any right of action it had by failing, for three years after entry of the Superior Court's October 2, 2001 order reinstating the letter of credit, to take any action to ensure CENCO's compliance with the order, or to otherwise seek reinstatement of the letter of credit. The Superior Court's order required CENCO to take all actions necessary to effectuate the reinstatement of the letter of credit and to cooperate with any efforts made by Golden West to have the letter of credit reinstated. SunTrust argues that because CENCO and Golden West knew that the Superior Court had no jurisdiction to order reinstatement of the letter of credit by SunTrust, and that SunTrust would not reinstate the letter unless adequate security for the credit was posted, and yet Golden West took

no action to ensure its reinstatement, Golden West waived its right to recover under the letter of credit.

**[8]** "[W]aiver is the intentional relinquishment or abandonment of a known right." *In re S.B.*, 32 Cal. 4th 1287, 1293 n.2 (2004) (internal quotation marks and citation omitted); *see also Magruder v. Commonwealth*, 275 Va. 283, 303 (2008). The district court concluded that "[t]he 'known right' which SunTrust asserts was waived never in fact existed." Following its determination that the irrevocable letter of credit at issue in this case had not been validly cancelled by SunTrust on July 12, 2001, the district court reasoned that Golden West's inaction with regard to seeking to compel CENCO to follow the October 2, 2001 order was consistent with Golden West's position that it had no obligation to seek such action because the letter of credit was never cancelled. The district court supported this reasoning by emphasizing that SunTrust's waiver argument would present Golden West with a Catch-22 scenario: had Golden West "sought such action, SunTrust would presumably be arguing today that Golden West agreed that the July 12, 2001 Order gave it license to terminate the Letter of Credit."

SunTrust argues that the district court conflated the validity of SunTrust's cancellation of the letter of credit with its effectiveness. SunTrust concedes that its cancellation was invalid, but argues that Golden West had notice that SunTrust had in fact cancelled the letter of credit and for that reason Golden West promptly asked the Superior Court to have the letter of credit reinstated. In its October 2001 order, the Superior Court ordered CENCO to "take all actions and do all things reasonably necessary" to reinstate the letter of credit. Armed with this order and the knowledge that SunTrust had cancelled, although wrongly, the letter of credit, Golden West did nothing to ensure that CENCO followed the mandate of the Superior Court. SunTrust argues that Golden West thereby waived any right to recover under the letter of credit.

**[9]** SunTrust's argument ignores the distinct nature of the three relationships formed under a letter of credit.[5] The judgment of the Superior Court affected only the relationship between Golden West and CENCO, and the failure of Golden West to take action to enforce the October 2001 order would affect only any right Golden West had to enforce that order against CENCO. As the district judge properly concluded, under the UCC, SunTrust could not cancel the letter of credit and end its relationship with Golden West based on an order from the Superior Court; the litigation in the Superior Court did not involve SunTrust or give SunTrust any right to cancel the letter of credit. "After a letter of credit is issued, rights and obligations of a beneficiary, applicant, confirmer, and issuer are not affected by an amendment or cancellation to which that person has not consented except to the extent the letter of credit provides that it is revocable or that the issuer may amend or cancel the letter of credit without that consent." UCC § 5-106(b). Under UCC § 5-108(a), an issuer can honor a presentation only if it "appears on its face strictly to comply with the terms and conditions of the letter of credit." *Id.* The letter of credit expressly provided that SunTrust could terminate the letter of credit only upon receipt of "a notarized written agreement signed by a vice president of Golden West Refining Company and a vice president of CENCO authorizing such reduction or termination." Under UCC §§ 5-106(b) and 5-108(a), therefore, no order from the Superior Court of California could permit SunTrust to validly cancel the letter

---

[5]"A letter of credit transaction involves at least three parties and three separate and independent relationships: (1) the relationship between the issuer and the beneficiary created by the letter of credit; (2) the relationship between the customer and the beneficiary created by a contract or promissory note, with the letter of credit securing the customer's obligations to the beneficiary under the contract or note; and (3) the relationship between the customer and the issuer created by a separate contract under which the issuer agrees to issue the letter of credit for a fee and the customer agrees to reimburse the issuer for any amounts paid out under the letter of credit." *W. Sec. Bank v. Superior Court*, 15 Cal. 4th 232, 239 n.3 (1997).

of credit. And, SunTrust was under no obligation to cancel the letter of credit because it was not a party to the state court action. *See, e.g.*, *Fazzi v. Peters*, 68 Cal. 2d 590, 594 (1968) ("[A] judgment may not be entered either for or against one not a party to an action or proceeding."); *O'Hara v. Pittston Co.*, 186 Va. 325, 346 (1947) (" '[G]enerally one not a party to an action is not bound by the judgment therein merely because he knew of the pendency of the action . . . .' " (quoting 1 FREEMAN ON JUDGMENTS, § 410 (5th ed. 1925)). Therefore, SunTrust's purported cancellation of the letter of credit had no legal effect. We thus affirm the district court's rejection of SunTrust's waiver argument and hold that the letter of credit was in existence and valid when Golden West made an unencumbered draw on the letter of credit on February 2, 2005.

## V

Finally, SunTrust contends that it is entitled to summary judgment on Golden West's claims for specific performance and breach of contract. Both parties have stipulated that the issue of consequential damages on the breach of contract claim is moot. Because we affirm the district court's order granting summary judgment to Golden West as to its claim of wrongful dishonor and because the remedies awarded by the district court on Golden West's breach of contract and specific performance claims are entirely duplicative of those awarded under the wrongful dishonor claim, except for the now moot issue of consequential damages, we need not and do not reach SunTrust's appeal of the breach of contract and specific performance claims. Whether breach of contract and specific performance theories can support relief beyond that flowing from UCC § 5-111 in the case of a wrongfully dishonored letter of credit can be considered in a case where it makes a difference.

## VI

In conclusion, we hold that the letter of credit here is not a perpetual letter of credit under UCC § 5-106(d), that Sun-

Trust did not waive its right to assert the affirmative defense of waiver to Golden West's wrongful dishonor claim, and that Golden West did not waive its right to seek a remedy for Sun-Trust's wrongful dishonor of the letter of credit by failing to take action to enforce the Superior Court's order requiring CENCO to reinstate the letter of credit. The letter of credit was in existence when Golden West made a valid draw on it on February 2, 2005, and SunTrust must honor the draw.

**AFFIRMED.**